## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                          Case No.: 6:09-cv-01658-GAP

**MIRABILIS VENTURES, INC.,**                   Bkry. Case No.: 6:08-bk-04327-KSJ

           **Debtor.**

_____/

**RACHLIN COHEN & HOLTZ LLP,**
**et al.**                                       **Consolidated**

           **Appellants,**      **Case No.: 6-09-cv-01658-GAP**

**v.**

**MIRABILIS VENURES, INC.,**

           **Appellee.**

_____/

### APPELLEE'S MOTION TO DISMISS CONSOLIDATED
### APPEALS AND INCORPORATED MEMORANDUM OF LAW

**MIRABILIS VENTURES, INC.** ("Mirabilis") and **HOTH HOLDINGS, LLC**

("Hoth") (collectively, Mirabilis and Hoth shall be referred to herein as "Appellee"), by

and through undersigned counsel, hereby move the Court for entry of an order dismissing

these consolidated appeals as moot for the reason that Appellee's Plan (as defined *supra*)

has been confirmed by the Bankruptcy Court, the Confirmation Order (as defined *supra*)

is a final non-appealable order, the Plan has been substantially consummated, and

effective relief is no longer available to the appellant in these appeals, and in support

thereof, states as follows:

## FACTUAL AND PROCEDURAL HISTORY

### I.      PRE-CONFIRMATION BANKRUPTCY PROCEDURAL BACKGROUND

1.      On May 27, 2008, Mirabilis and Hoth filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code (the "Petition Date").  On June 5, 2008, AEM, Inc. ("AEM") also filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.  The bankruptcy cases are styled as follows: (i) *In re: Mirabilis Ventures, Inc.*, case no. 6:08-bk-04327-KSJ (the "Mirabilis Bankruptcy Case"); (ii) *In re: Hoth Holdings, LLC*, case no. 6:08-bk-04328-KSJ (the "Hoth Bankruptcy Case"); and (iii) *In re: AEM, Inc.*, case no. 6:08-bk-04681-KSJ (the "AEM Bankruptcy Case") (collectively, Mirabilis, Hoth and AEM shall be referred to as "Debtors").

2.      The Chapter 11 filings came primarily as a result of an *in rem* civil forfeiture action filed by the United States of America against certain assets of Mirabilis and Hoth, which effectively caused Mirabilis and Hoth to be unable to pursue claims and litigation against various third parties.  The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Frank L. Amodeo ("Amodeo"). In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis and Hoth deemed a Chapter 11 liquidation plan as in the best interest of all creditors.

3.      On August 14, 2008, the United States of America filed motions in the Bankruptcy to intervene and to stay the Mirabilis Bankruptcy Case, the Hoth Bankruptcy

Case and the AEM Bankruptcy Case ("Stay Motion") (Mirabilis Doc. No. 48, Hoth Doc. No. 30, AEM Doc. No. 34).

4.       In the Stay Motion, the United States of America sought to stay the Debtors' bankruptcy cases in order to pursue a forfeiture and seizure action against property of the Debtors' bankruptcy estates.  If granted, the United States might have been able to seize substantially all of the assets of the bankruptcy estates.

5.       On September 24, 2008, the United States of America filed Motions to Dismiss the Mirabilis Bankruptcy Case and the Hoth Bankruptcy Case based upon alleged bad faith filings (the "USA Dismissal Motions") (Mirabilis Doc. No. 41, Hoth Doc. No. 40).  On September 25, 2008, the United States of America filed a Motion to Dismiss the AEM Bankruptcy Case also based upon its alleged bad faith filing (the "AEM Dismissal Motion") (AEM Doc. No. 45).

6.       On October 3, 2008, Forge Capital Partners, LLC f/k/a Moreco Partners, LLC, Argent Capital Advisors, LLC f/k/a Atlantic American Capital Advisors, LLC, Argent BD, LLC, Argent BD Tranition, LLC, Robert Moreyra, Peter Collins, Bison Mortgage Corp., and Solutions Funding, Inc. (collectively, "Forge Creditors") joined in the USA Dismissal Motions (the "Forge Dismissal Motions") (Mirabilis Doc. No. 88, Hoth Doc. No. 47).  No party joined in the AEM Dismissal Motion.

7.       On November 25, 2008, the Debtors and the USA reached an accord and filed a Joint Motion to Approve Compromise of Controversy with respect to the USA Dismissal Motions and the AEM Dismissal Motion ("Compromise") (Mirabilis Doc. No. 101, Hoth Doc. No. 55, AEM Doc. No. 59).

8.     Under the terms of the compromise, the USA was to acquire personal and real property owned by the Debtors, but the Debtors were to retain, among other things, the proceeds and the rights to lawsuits against various third party professionals relating to their substandard legal and financial advice.

9.     Shortly thereafter, on December 5, 2008, and as a result of the Compromise, Mirabilis filed four (4) simultaneous adversary proceedings against Mirabilis' legal and financial advisors for the negligence in advising Mirabilis concerning the PBS plan.  (Mirabilis Doc. Nos. 107, 108, 112, 113).  In addition, Hoth filed an adversary complaint against the Forge Creditors to avoid and recover fraudulent transfers. (Hoth Adv. Doc. No. 1)

10.     On February 12, 2009, the Bankruptcy Court entered an order approving the Compromise in the AEM Bankruptcy Case. (AEM Doc. No. 78).  On March 4, 2009, the Bankruptcy Court entered an order approving the Compromise in the Mirabilis Bankruptcy Case and the Hoth Bankruptcy Case. (Mirabilis Doc. No. 145, Hoth Doc. No. 74).

11.     Pursuant to the terms of the Compromise, the USA Dismissal Motions and the AEM Dismissal Motion were withdrawn with prejudice.

12.     On April 23, 2009, Rachlin Cohen & Holtz LLP, Laurie S. Holtz and Jose I. Marrerro (collectively, "Rachlin") also filed a Motion to Dismiss the Mirabilis Bankruptcy Case (the "Rachlin Dismissal Motion") (Mirabilis Doc. No. 183).  The Forge Dismissal Motions and the Rachlin Dismissal Motion raise substantially the same factual and legal arguments.

13.     On August 26, 2009, the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 7052, stated orally in open court the findings of fact and conclusions of law denying the Forge Dismissal Motions and the Rachlin Dismissal Motion.

14.     Specifically, the Bankruptcy Court made the following findings of fact and conclusions of law: (i) the Debtors had the corporate authority to file the Chapter 11 petitions; (ii) the Chapter 11 Petitions were not filed in "bad faith;" and (iii) the allegations regarding the relationship between Amodeo and the Debtors were not relevant in ruling on the Forge Dismissal Motion and the Rachlin Dismissal Motion.

15.     On September 2, 2009, the Bankruptcy Court entered an order denying the Forge Dismissal Motions and the Rachlin Dismissal Motion ("Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case") (Mirabilis Doc. No. 268, Hoth Doc. No. 123).

16.     On September 14, 2009, the Rachlin and Forge Creditors filed Notices of Appeal of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case (Mirabilis Doc. No. 283, 287, Hoth Doc. No. 126) and Motions for Leave to Appeal Interlocutory Order Denying Motion to Dismiss Chapter 11 Bankruptcy Case ("Motions for Leave") (Mirabilis Doc. No. 286, 288, Hoth Doc. No. 127) (the appeals shall respectively be referred to as the "Rachlin Appeal" and the "Forge Appeal").

17.     On September 28, 2009, the Appellee filed Objections to the Motions for Leave (Mirabilis Doc. No. 308, Hoth Doc. No. 141) ("Objections to Interlocutory Appeal").

18.     The Appellee opposes the Motions for Leave and requested the Court to deny leave to appeal on the following grounds: (i) the Rachlin appeal and the Forge Appeal do not involve a controlling issue of law, but rather findings of fact made by the Bankruptcy Court; (ii) the Rachlin Appeal and the Forge Appeal does not implicate a substantial ground for difference of opinion on an issue of law, but rather misconstrues the weight of authority permitting liquidation in Chapter 11 proceedings; and (iii) the Rachlin Appeal and the Forge Appeal will not materially advance the ultimate termination of the litigation because the litigation between the parties, as well as the bankruptcy proceedings, would still ensue.

19.     Neither Rachlin nor the Forge Creditors sought a stay of the either Mirabilis Bankruptcy Case or the Hoth Bankruptcy Case pending appeals of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case pursuant to Federal Rule of Bankruptcy Procedure 8005.

20.     On September 29, 2009, the Forge Appeal, including the bankruptcy records on appeal, was transmitted to the District Court and docketed in Case Nos. 6:09-cv-01659-GAP and 6:09-cv-01660-GAP.  The Rachlin Appeal, including the bankruptcy record on appeal, was also transmitted to the District Court and docketed in Case No. 6:09-cv-01658-GAP.

21.     The issues presented by the Forge Creditors in the Forge Appeal are as follows: (i) whether the Bankruptcy Court erred when it ruled that the filing of the Mirabilis Bankruptcy Case was not an *ultra vires* act of Mirabilis; (ii) whether the Bankruptcy Court erred when it ruled that a company with no ability or intent to

reorganize can initiate and file a Chapter 11 Petition under the Bankruptcy Code with the sole intent to self-liquidate; (iii) whether the Bankruptcy Court erred when it ruled that Mirabilis and Hoth had standing to file Chapter 11 Petitions even though the companies were a sham and controlled by Frank Amodeo for an improper purpose; (iv) whether the Bankruptcy Court erred when it denied the request to convert the cases to a Chapter 7; and (v) whether the Bankruptcy Court erred when it ruled that a single asset company with no ability or intent to reorganize can initiate and file a Chapter 11 Petition under the Bankruptcy Code with the sole intent to self-liquidate in order to stop a pending state court case.

22.     The relief requested by the Forge Creditors in the Forge Appeal is for the District Court to reverse the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case and direct the Bankruptcy Court to dismiss the Mirabilis Bankruptcy Case and the Hoth Bankruptcy Case.  The Forge Appeal does not address the AEM Bankruptcy Case.

23.     Although Rachlin has not yet filed its brief in the Rachlin Appeal, the issues on the Rachlin Appeal are presumably the same, as the grounds articulated in the Rachlin Dismissal Motion and the Forge Dismissal Motions involve the same questions of law and fact.  Presumably, the relief requested by Rachlin will be the same as the relief requested by the Forge Creditors.

24.     On February 3, 2010, the Court entered an order granting the Unopposed Motion to Consolidate the Forge Appeal and the Rachlin Appeal. (Doc. No. 14).  The Rachlin Appeal has been designated as the lead case (collectively, the Rachlin Appeal and the Forge Appeal shall be referred to as the "Consolidated Appeal").

## II.   POST-CONFIRMATION BANKRUPTCY PROCEDURAL BACKGROUND

25.    On October 16, 2009, the Bankruptcy Court conducted a hearing ("Confirmation Hearing") to consider the confirmation of the Joint Amended Plan of Liquidation submitted by Mirabilis, Hoth and AEM, dated as of August 14, 2009 (Mirabilis Doc. No. 234, Hoth Doc. No. 115, AEM Doc. No. 133), and as modified on October 15, 2009 (Mirabilis Doc. No. 371, Hoth Doc. No. 148, AEM Doc. No. 172) (collectively, each of these docket entries shall hereinafter be referred to as the "Plan").

26.    On October 27, 2009, the Bankruptcy Court entered an order confirming the Plan ("Confirmation Order") (Mirabilis Doc. No. 375, Hoth Doc. No. 150, AEM Doc. No. 174).   No party-in-interest filed a notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8001 and 8002, or moved for relief from judgment pursuant to Federal Rule of Bankruptcy Procedure 9024.   Although a motion for reconsideration pursuant to Federal Rule of Bankruptcy Procedure 9023 was filed, on December 21, 2009, the Bankruptcy Court entered an order striking the motion for reconsideration (Mirabilis Doc. No. 455).   Accordingly, on January 5, 2010, the Confirmation Order became a final order. A copy of the Confirmation Order is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

27.    The Confirmation Order made the following findings of fact and conclusions of law which are relevant to the Consolidated Appeal:

> I. B. Debtors have afforded all parties-in-interest with an adequate opportunity to be heard regarding the Plan and Disclosure Statement, and the Plan complies with Bankruptcy Code §1127 and Federal Rule of Bankruptcy Procedure 3019.   All parties received adequate notice in accordance with applicable provisions

of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Balloting Order.

E. Mirabilis, Hoth, and AEM are proper Debtors under Section 109 of the Bankruptcy Code.

G. The Debtors have solicited and tabulated votes in respect of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Balloting Order.

W. This Court has examined the totality of the circumstances surrounding the formulation of the Plan.  The Plan has been proposed in good faith by the Debtors.  The Debtors have acted in good faith in formulating and proposing the Plan and have properly performed their fiduciary duties.  All parties have acted in good faith and received no unfair advantage.

Y. On the Effective Date: (i) all assets, and all proceeds thereof, and all liabilities of the Debtors, will be treated as though the assets and liabilities were merged into a single entity which shall be the Liquidating Debtor; (ii) all Intercompany Claims will receive no distribution under the Plan; (iii) any obligation of any Debtors and all Guaranties thereof executed by one or more of the Debtors, and any Claims filed in a case of a Debtor hereof or to be filed in connection with any such obligation and guarantee will be deemed one Claim against the Liquidating Debtor; (iv) each and every Claim filed in the individual Chapter 11 Case of any of the Debtors will be deemed filed against the Liquidating Debtor; and (v) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated for purposes of the Plan as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the Debtors.

Z. On the Effective Date, the Liquidating Debtor shall receive, retain, and pursue for the benefit of holders of Allowed Claims, any and all Causes of Action belonging to any of the Debtors.  Any rights to claim any legal privileges previously enjoyed by the Debtors shall also vest in the Liquidating Debtor to be exercised by the President.  For purposes of the Plan, the Liquidating Debtor, through its President acting in his or her official, shall be designated as the representative of the Bankruptcy Estates for the

retention and enforcement of any Claim or Interest belonging to the Debtors or the Bankruptcy Estates pursuant to 11 U.S.C. § 1123(b)(3)(B). Any recovery from the Causes of Action will be paid to the holders of Allowed Claims as provided for herein, less the costs of recovering or attempting to recover Extraordinary Income through the Causes of Action and other means.

EE. Each Holder of an Impaired Claim that has not accepted the Plan will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interests" test under § 1129(a)(7)(A)(ii) of the Bankruptcy Code. See Confirmation Order, pp. 3-9.

28.     Since the Effective Date and pursuant to the terms of the Plan and Confirmation Order, the pre-confirmation entities known as Mirabilis, Hoth and AEM have been merged into the single, post-confirmation Liquidating Debtor, known as Mirabilis. All real and personal property of the Debtors, including causes of action, have been transferred to the Liquidating Debtor. The equity interests in the Debtors have been cancelled, and the common stock in the Liquidating Debtor and the ownership of such stock has vested in the Stock Trust to be held in trust for the benefit of the Holders of Allowed Class 2 Claims. See Affidavit of R.W. Cuthill, Jr.[1]

29.     The pre-confirmation board of directors has resigned, and the Liquidating Debtor has appointed R. William Cuthill, Jr. to serve as the sole director and president of Mirabilis. See Affidavit of R.W. Cuthill, Jr.

---

[1] Because the facts upon which the motion to dismiss is premised occurred subsequent to the entry of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case, Appellee filed Mr. Cuthill's affidavit in support of this motion. The District Court has the authority to review post-confirmation facts not before the Bankruptcy Court. See In re Manges, 29 F. 3d 1034, 1041 (5th Cir. 1994) ("this court may review evidence as to subsequent events not before the courts below which bears upon the issue of mootness"). In the event the Appellant object to the affidavit, Appellee requests an evidentiary hearing to determine any issue of fact.

30.     The administrative claims of the Mirabilis Bankruptcy Case, Hoth Bankruptcy Case and AEM Bankruptcy Case have been approved by the Bankruptcy Court and partially paid by the Liquidating Debtor. See Affidavit of R.W. Cuthill, Jr.

31.     Furthermore, the Liquidating Debtor has continued the prosecution of objections to claims which so far have resulted in approximately twenty (20) final orders adjudicating the rights of third parties with respect to claims against the Liquidating Debtor. See Affidavit of R.W. Cuthill, Jr.

## LEGAL ARGUMENT AND
## INCORPORATED MEMORANDUM OF LAW

32.     The threshold question in respect of the Consolidated Appeal is whether the appeal of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case has been rendered "moot" by the Confirmation Order.   Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. Art. III, § 2, cl. 1.   The doctrine of mootness "derive[s] from this limitation because an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval County Sch. Bd., 112 F. 3d 1475, 1477 (11th Cir. 1997).   Where "events subsequent to the commencement of a lawsuit create a situation where the court can no longer give the plaintiff meaningful relief," the case is moot and should be dismissed. Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F 3d 627, 629 (11th Cir. 1998).

33.     The doctrine of equitable mootness applies chiefly in bankruptcy proceedings because of the nature of bankruptcy judgments.   Essentially, equitable

mootness "is a pragmatic principle grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Mac Panel Co. v. Virginia Panel Corp., 283 F. 3d 622, 625 (4th Cir. 2002).   In the bankruptcy context, equitable mootness asks "whether it would be prudent to upset the plan of reorganization at this late date." Matter of UNR Industries, Inc., 20 F. 3d 766, 769 (7th Cir. 1994).   As such, unlike the constitutional doctrine of mootness, which bars consideration of appeals because no Article III case or controversy exists, equitable mootness is often invoked when it would be unfair or impractical to grant the relief requested. See Mac Panel, 283 F. 3d at 625.

## I.    CONSTITUTIONAL MOOTNESS

34.    An appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it "impossible for the court to grant 'any effectual relief whatever.'" Church of Scientology v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 449, 121 L. Ed. 2d 313(1992).   If the court can fashion "some form of meaningful relief," the appeal is not moot simply because a court cannot restore the parties to the *status quo ante*. Id.

35.    The Confirmation Order is a final judgment for purposes of the doctrine of *res judicata*, and as such bars the litigation by a party in a subsequent action of the same claim, demand or cause, with respect to all or any part of the transaction, out of which the first action arose. See Harnett v. Billman, 800 F. 2d 1308, 1314 (4th Cir. 1986).   A confirmed plan is a contract, approved by the court that involves matters of offer,

acceptance, performance, and other contract principles.  See In re Toy King Distributors, Inc., 256 B.R. 1, 156-57 (Bankr. M.D. Fla. 2000).  The confirmed plan is binding on all parties even if it is contrary to bankruptcy law, unless confirmation is successfully appealed, revoked, or otherwise set aside.  In re Sullivan, 153 B.R. 746, 751 (Bankr. N.D. Tex. 1993).

36.   The continued prosecution of the Consolidated Appeal would constitute an impermissible collateral attack on the Confirmation Order.  When a court of competent jurisdiction has entered a final judgment on the merits of the cause of action, the parties to the suit and their privies are therefore bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.  Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S. Ct. 715, 92 L.Ed. 898 (1948).

37.   In the case In re Justice Oaks II, Ltd., 898 F. 2d 1544, 1547 (11th Cir. 1990), the plaintiffs in an adversary proceeding, who were contingent unsecured creditors with personal guaranties on behalf of the debtor in favor of one of the secured lenders, alleged that representatives of the debtor, in concert with the secured lenders, made several fraudulent misrepresentations to the plaintiffs in order to convince the plaintiffs to guarantee a bank loan.  Part of the relief requested by the plaintiffs was an equitable lien in their favor on the proceeds of the debtor's sale of real property in the amount of their potential liability on the aforementioned guaranties.  See id.  The plaintiffs also filed an objection to confirmation based on the same factual allegations contained in the complaint.  See id.  The bankruptcy court overruled the objection to the plan and

confirmed the plan.  See id. at 1548.  The plaintiffs appealed the confirmation order; however, the appeal was dismissed for not being timely filed.  See id.  Subsequently, the bankruptcy court dismissed the adversary proceeding on the grounds that all of the issues raised in the complaint had been considered by the court when it confirmed the plan.  See id.  The plaintiffs appealed the order dismissing the adversary proceeding.  See id.

38.     The issue before the Eleventh Circuit was whether the confirmation order satisfied the requirements of a judgment that can be given preclusive effect and therefore bar the litigation of the claims made by the plaintiffs in their adversary proceeding. See id. at 1549.  The court held that the confirmation order could be given preclusive effect and bar the litigation of the claims in the adversary proceeding because the confirmation order: (i) was rendered by a court of competent jurisdiction in accordance with due process; (ii) was final and on the merits; (iii) had identity of parties; and (iv) involved the same cause of action as was involved in the adversary proceeding.  See id. at 1550.  In determining whether an order or judgment can be given preclusive effect as a final judgment on the merits, the Eleventh Circuit analyzed four requirements which must be present and satisfied by the order or judgment in question.  First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process.  See id.  Second, the judgment must be final and on the merits.  See id.  Third, there must be identity of both parties or their privies.  See id.  Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.  See id.

39.    The court reasoned that all four requirements were satisfied by the confirmation order and the issues raised in the adversary proceeding. See id. First, the confirmation order was entered by a court of competent jurisdiction, in accordance with due process, and in compliance with bankruptcy rules of procedure. See id.  Second, the confirmation order constitutes a final judgment on the merits. See id.   Third, all of the parties to the adversary proceeding were parties to the confirmation proceeding and the parties against whom the prior order was asserted (the plaintiffs) had a full and fair opportunity to raise their objection. See id.  A party for purposes of former adjudication includes "all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine witnesses and appeal from the judgment if an appeal lies." Id. at 1550-51 (citing, 1 A. Freemen, A Treatise of the law of Judgments §430, at 936-37 (5th ed. 1925).  Finally, the claims made by the plaintiffs in the adversary proceeding involve the same cause of action at issue in the confirmation proceeding. See id. at 1551.  Claims are part of the same cause of action when they arise out of the same transaction or series of transactions.  See id.   The claims of misrepresentation and fraud raised by the plaintiffs in the adversary proceeding were the same claims raised in their objection to confirmation.   See id.   Therefore, the confirmation order was based, in part, on the transaction at the core of the plaintiffs' claims in the adversary proceeding. See id.

40.    In the Consolidated Appeal, the Confirmation Order was entered by a court of competent jurisdiction and in accordance with due process.    Second, the Confirmation Order constitutes a final judgment on the merits. And third, there is

complete identity of parties because all of the parties to the Confirmation Order and the Plan were parties to the Rachlin Dismissal Motion, the Forge Dismissal Motions and the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case, and the party against whom the prior order is asserted (Rachlin and the Forge Creditors) had a full and fair opportunity to raise their objections.

41.     Finally, Rachlin and the Forge Creditors moved to dismiss the Mirabilis Bankruptcy Case and the Hoth Bankruptcy Case based upon the following claims: (i) the cases were filed in bad faith; (ii) there was no corporate authority to file the Chapter 11 petitions; and (iii) the Debtors had no reasonable likelihood of confirming a plan of reorganization.  These same claims were addressed at the Confirmation Hearing and by the Confirmation Order.  At the Confirmation Hearing and in the Confirmation Order, the Bankruptcy Court specifically found that the Debtors were proper debtors under the Bankruptcy Code, and that the Plan complied with the requirements of 11 U.S.C. § 1129, including, but not limited to, the Plan was proposed in good faith, provided for fair and equitable treatment, and was feasible given the proposed liquidation.

42.     Accordingly, the issues on appeal of: (i) whether Mirabilis and Hoth filed the Chapter 11 Petitions in good faith; (ii) whether Mirabilis and Hoth possessed the requisite corporate authority to file the Chapter 11 Petitions; (iii) whether the alleged relationship between the Mirabilis and Amodeo had any relevancy to the Forge Dismissal Motion; and (iv) whether it constitutes "bad faith" for a putative Chapter 11 debtor to file a petition for relief for the sole purpose of liquidation, have been mooted by the Confirmation Order.

43.     Moreover, it is impossible for the Court to grant any effectual relief whatever to Rachlin and the Forge Creditors because the Confirmation Order effects not only the bankruptcy estates of Mirabilis and Hoth, but also the bankruptcy estate of AEM.  There is no pending appeal in the AEM Bankruptcy Case regarding a motion to dismiss the AEM Bankruptcy Case.  All the assets and liabilities of AEM, as well as the assets and liabilities of Mirabilis and Hoth, have been transferred to the Liquidating Debtor.  The Confirmation Order is final, and as such there is no form of meaningful relief which can be granted to Rachlin and the Forge Creditors by this Court.  As such, the Consolidated Appeal should be dismissed as moot.

## II.     EQUITABLE MOOTNESS

44.     The Eleventh Circuit discussed the application of the equitable mootness doctrine to bankruptcy appeals in the case In re Holywell Corp., 911 F. 2d 1539, 1543 (11th Cir. 1990), rev'd on other grounds, 503 U.S. 47 (1992):

> The mootness doctrine, as applied in a bankruptcy proceeding, permits courts to dismiss an appeal based on its lack of power to rescind certain transaction. See Markstein v. Massey Associates Ltd., 763 F. 2d 1325 (11th Cir. 1985); In re Roberts Farms, Inc., 652 F. 2d 793 (9th Cir. 1981); Miami Center Limited Partnership v. Bank of New York, 838 F.2d 1547 (11th Cir. 1988). The mootness standard is premised upon considerations of finality and the court's inability to rescind and grant relief on appeal. Miami Center Limited Partnership, 838 F. 2d at 1553 (quoting In re Sewanee Land Coal & Cattle, Inc., 735 F. 2d 1294 (11th Cir. 1984)).  In dismissing the debtors' previous challenge, this court was guided by the important policy of bankruptcy law that court-approved reorganization plans be able to move forward based on court approval unless a stay is obtained.  Miami Center Limited Partnership, 838 F. 2d at 1555. Mindful of that policy, we will not entertain any challenge to the Plan which seeks to modify or amend its provisions.
>
> ...

> The need for finality requires that we decline to address the merits
> of these allegations which seek to challenge the court-approved
> plan.

45.     Subsequently, in the case <u>In re Club Associates</u>, 956 F. 2d 1065 (11th Cir.

1992), the Eleventh Circuit again affirmed a district court's dismissal of an appeal from a

bankruptcy court's confirmation order on the grounds of mootness and determined that

the central issue before court on a motion to dismiss was whether the court would be able

to grant effective relief:

> Central to a finding of mootness is a determination by an appellate
> court that it cannot grant effective judicial relief.  Put another way,
> the court must determine whether the 'reorganization plan has been
> so substantially consummated that effective relief is no longer
> available.'  <u>Miami Center Limited Partnership v. Bank of New
> York</u>, 820 F.2d 376, 379 (11th Cir. 1987).  As the district court
> properly noted, substantial consummation by itself does not
> resolve the issue.  Even if substantial consummation has occurred,
> a court must still consider all of the circumstances of the case to
> decide whether it can grant effective relief.
>
> The test for mootness reflects a court's concern for striking the
> proper balance between the equitable considerations of finality and
> good faith reliance on a judgment and the competing interests that
> underlie the right of a party to seek review of a bankruptcy court
> order adversely affecting him.  <u>In re Information Dialogues, Inc.</u>,
> 662 F. 2d 475, 477 (8th Cir. 1981).

46.     Furthermore, the Eleventh Circuit, in the case <u>In re Winn-Dixie Stores,

Inc.</u>, 377 B.R. 322, 330 (11th Cir. 2007), has adopted the seven factors courts should

consider in rendering a mootness determination summarized by Judge Kovachevich in

the case <u>In re Condec, inc.</u>, 225 B.R. 800 (M.D. Fla. 1998):

> The court must look to the following: (1) a consideration of the
> interests of finality and the passage of time; (2) whether there has
> been a comprehensive change in the circumstances; (3) whether a
> stay has been obtained and if not, why not; (4) whether the

debtor's reorganization plan has been substantially consummated and if so, what type of transactions have been consummated; (5) the type of relief sought; (6) the effect of granting such relief on third parties not currently before the Court; and (7) the threat to the re-emergence of the debtor as a revitalized entity.

A. *THE INTERESTS OF FINALITY AND PASSAGE OF TIME.*

47.     The Eleventh Circuit has recognized the important public policy affording finality to court-approved reorganization plans. See Miami Center Ltd. Partnership, 838 F. 2d at 1555. The interest of finality is especially compelling where the confirmation order has been relied upon by third parties. In re Continental Airlines, 91 F. 3d 553, 562 (3d Cir. 1996).

48.     The Consolidated Appeal has been pending since September 2009. The Confirmation Hearing occurred in October 2009, and the Confirmation Order has been a final order for over a month. The finality of the Confirmation Order has been relied upon by the Debtors and their creditors.

B. *THERE HAS BEEN A COMPREHENSIVE CHANGE OF CIRCUMSTANCES.*

49.     The change of circumstances occurring since the Bankruptcy Court entered the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case and the Confirmation Order includes the following: (i) the Debtors have transferred all real and personal property to the Liquidating Debtor; (ii) the Debtors cancelled their pre-petition stock; (iii) the stock in the Liquidating Debtor and the ownership of such stock has vested in the Stock Trust to be held in trust for the benefit of the Holders of Allowed Class 2 Claims; (iv) the Liquidating Debtor has rejected all of the Debtors' pre-petition lease and

executory contracts; and (v) the Liquidating Debtor has partially paid the administrative expenses of the Debtors' Bankruptcy Cases.

50.     As a result, the circumstances existing at the time of the Appellants' notices of appeal have substantially and irreversibly changed.

C. *THE APPELLANTS DID NOT SEEK OR OBTAIN A STAY PENDING APPEAL.*

51.     None of the Appellants sought or obtained a stay of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case.   The Eleventh Circuit, in <u>Club Associates</u>, held that the absence of a stay was "relevant to its equities determination which underlay the mootness inquiry" and that "First Union's failure to seek a stay prior to Club's certification of funds is a factor supporting a finding of inequity."  956 F. 2d at 1070-1071.

52.     In affirming a district court's dismissal of a bankruptcy appeal in the absence of a stay, the Fourth Circuit observed:

> Some controversies are not amenable to judicial resolution, and some grow beyond the remedial powers of a court.   This is particularly true when a party, seeking a return to the *status quo ante* sits idly by and <u>permits intervening events to extinguish old rights and create new ones.</u>  <u>Mac Panel Co.</u>, 283 F. 3d 622, 625 (4th Cir. 2002) (emphasis added).

53.     This is exactly what has happened in the Consolidated Appeal.   The Appellants sat by and watched the Debtors proceed to confirmation and implement their Plan. The Appellants were served with the Plan and disclosure statement and, as evident from the objection Rachlin filed to Plan, were intimately familiar with the Plan terms[2].

---

[2]  *Objection to Confirmation of Joint Amended Plan of Liquidation of Rachlin Cohen & Holtz LLP* (Mirabilis Doc. No. 322).

The Plan sets forth the actions required of the Debtors upon the occurrence of the Effective Date. The Appellants' failure to obtain a stay before the Confirmation Hearing and Confirmation Order created the present situation in which it would be inequitable to fashion any relief.

D. *THE PLAN HAS BEEN SUBSTANTIALLY CONSUMMATED.*

54.    Substantial consummation is defined by Section 1101(2) of the Bankruptcy Code as follows:

> (2) "substantial consummation" means —
> (A)    transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B)    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C)    the commencement of distribution under the plan.
>        11 U.S.C. §1101(2) (2009).

55.    All three elements of substantial consummation are met in this case. The Debtors have: (i) transferred all of the property to be transferred under the Plan; (ii) rejected all of the leases and executory contracts contemplated under the Plan; (iii) cancelled its old stock; (iv) the stock in the Liquidating Debtor and the ownership of such stock has vested in the Stock Trust to be held in trust for the benefit of the Holders of Allowed Class 2 Claims; and (v) partially paid administrative claims.

56.    When the Plan has been substantially consummated, there is "a strong presumption of mootness." Miami Center, 838 F. 2d at 1555 (quoting In re AOV Indus. Inc., 792 F. 2d 1140, 1149 (D.C. Cir. 1986)).

E.  *THE TYPE OF RELIEF SOUGHT.*

57.    In the Consolidated Appeal, the Appellants assert that the Bankruptcy Court erred in either not dismissing the Mirabilis Bankruptcy Case and the Hoth Bankruptcy Case, or failing to convert the cases to Chapter 7 under the Bankruptcy Code. However, even if the Appellants are correct, this Court is without the ability to vacate the Confirmation Order and restore the parties to the *status quo*.  The Confirmation Order is not before the Court on appeal, but is a final order that has been implemented, acted upon, and relied on by third parties.

58.    If this Court were to reverse the Bankruptcy Court, the resulting consequences would be inconsistent judicial decisions and an unmanageable legal quandary of rights and obligations.

F.  *EVEN IF THE COURT COULD GRANT RELIEF MORE LIMITED THAN REVERSAL, IT WOULD ADVERSELY AFFECT THIRD PARTIES NOT BEFORE THE COURT.*

59.    Even if the Court could do as the Appellants argue, and grant some form of limited relief, any such relief would impermissibly adversely affect third parties not before the Court.  However, as a matter of law, neither this Court nor the Bankruptcy Court may modify a confirmed plan.  See 11 U.S.C. §1127 (2009);  see also, In re Beal Bank, S.S.B. v. Jack's Marine, Inc., 201 B.R. 376, 380 (E.D. Pa. 1996) ("Nor can a court rewrite a confirmed plan on the grounds of perceived equities.") (citations omitted); Goodman v. Phillip R. Curtis Enter., Inc., 809 F. 2d 228, 234 (4th Cir. 1987).

60.    The Debtors, including AEM which is not a party to the Consolidated Appeal, their creditors and third parties have consummated a multi-debtor reorganization in reliance on an unstayed Order Denying Motions to Dismiss Chapter 11 Bankruptcy

Case.  The granting of any relief upon appellate review of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case at this late date would create an unmanageable, uncontrollable situation and undermine the public's confidence in the finality of bankruptcy court orders.

G.  *THE THREAT TO THE RE-EMERGENCE OF MIRABILIS AND HOTH AS A REVITALIZED ENTITY.*

61.    With regard to the final factor, the risk posed to the Debtors by a reversal of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case is unfathomable. The potential for inconsistent judicial decisions and the resulting litigation over the Plan, in addition to the other litigation already pending before the Bankruptcy Court, would significantly reduce or eliminate any potential distributions to the unsecured claims in the bankruptcy cases.

## **CONCLUSION**

62.     Based upon established Eleventh Circuit authority, Mirabilis Ventures, Inc. and Hoth Holdings LLC request that this Court enter an order dismissing these Consolidated Appeals as moot for the reasons that Appellee's Plan has been confirmed by the Bankruptcy Court, the Confirmation Order is a final non-appealable order, the Plan has been substantially consummated, and effective relief is no longer available to the Appellants in these Consolidated Appeals.

**DATED** this 5th day of February, 2010.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No. 984469
Mariane L. Dorris
Florida Bar No. 0173665
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, FL 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
rshuker@lseblaw.com
mdorris@lseblaw.com
Attorneys for Mirabilis Ventures, Inc.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              Case No.: 6:09-cv-01658-GAP

MIRABILIS VENTURES, INC.,                           Bkry. Case No.: 6:08-bk-04327-KSJ

                Debtor.
_____/

RACHLIN COHEN & HOLTZ LLP,
et al.                                              Consolidated

                Appellants,             Case No.: 6-09-cv-01658-GAP
v.

MIRABILIS VENURES, INC.,

                Appellee.
_____/

## Certificate of Service

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic transmission and/or U.S. First Class mail, postage prepaid, to: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., President, 341 N. Maitland Ave, Suite 210, Maitland, Florida 32751; Joseph A. DeMaria, Tew Cardenas LLP, Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131; Bart R. Valdes, Esq., deBeubien, Knight, Simmons, Mantzaris & Neal, LLP, 609 W. Horatio Street, Tampa, FL 33606; David H. Simmons, Esq., deBeubien, Knight, Simmons, Mantzaris & Neal, LLP , 322 North Magnolia Avenue, P.O. Box 87, Orlando, Florida 32801; and the United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801 on this 5th day of February 2010.

                                /s/ R. Scott Shuker
                                R. Scott Shuker, Esq.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**In re:**

| | |
|---|---|
| **MIRABILIS VENTURES, INC.,** | **CASE NO. 6:08-bk-04327-KSJ** |
| **HOTH HOLDINGS, LLC, and** | **CASE NO. 6:08-bk-04328-KSJ** |
| **AEM, INC.,** | **CASE NO. 6:08-bk-04681-KSJ** |
| **Debtors.** | **CHAPTER 11** |

_____/

### ORDER CONFIRMING JOINT AMENDED PLAN OF LIQUIDATION, AS MODIFIED, SUBMITTED BY MIRABILIS VENTURES, INC., HOTH HOLDINGS, LLC, AND AEM, INC.

**THIS CASE** came before the Court at a hearing on October 16, 2009 (the "Hearing") to

consider: (a) confirmation of the Joint Amended Plan of Liquidation submitted by Mirabilis

Ventures, Inc., ("Mirabilis"), Hoth Holdings, LLC ("Hoth"), and AEM, Inc. ("AEM")

(collectively, hereinafter referred to as the "Debtors"), dated as of August 14, 2009 (Doc. No. 234

- Mirabilis, Doc. No. 133 - AEM, Doc. No. 115 - Hoth), and as modified on October 15, 2009

(Doc No. 371 - Mirabilis, Doc. No. 172 - AEM, Doc. No. 148 - Hoth), (collectively, each of

these Docket entries, hereafter referred to as the "Plan"); (b) Motion for Cramdown of Class 3,

Equity Interests, which was filed with the Court on October 15, 2009 (Doc. No. 370)

("Cramdown Motion"); (c) the Motion to Approve Compromise with Diane Hendricks,

individually and as Trustee of Hendricks Irrevocable Trust ("Hendricks Compromise") (in the

Mirabilis case) (Doc No. 320); (d) the Motion to Approve Compromise with Diane Hendricks,

individually and as Trustee of Hendricks Irrevocable Trust (in the AEM case) (Doc. No. 159);

and (e) the objections to confirmation filed by Hans C. Beyer, *et al.* (Doc No. 321); Rachlin

Cohen & Holtz, LLP (Doc No. 322); Richard E. Berman, *et al.* (Doc No. 338); James Moore &

**EXHIBIT "A"**

Co, PL (Doc No. 365); the Internal Revenue Service (Doc No. 366); and O2HR, LLC (Doc No. 369) (collectively, hereinafter referred to as the "Objections").

On August 4, 2009, the Court entered an Order Approving the Disclosure Statement, Scheduling Confirmation Hearing for September 16, 2009, Establishing Confirmation, Compensation, and Administrative Claims Hearing Procedures, and Fixing Time for Filing Acceptances or Rejections of Plan (Doc. No. 228 - Mirabilis, Doc. No. 121 - AEM, Doc. No. 112 - Hoth) (the "Balloting Order"). The Plan was distributed to creditors and parties-in-interest on and after August 14, 2009. Thereafter, on September 1, 2009, the Court entered an amended order rescheduling the hearing on confirmation of the Plan for October 16, 2009 ("Amended Order") (Doc No. 266). Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Plan and Disclosure Statement.

At the Hearing, counsel for Debtor made the following *ore tenus* modifications: (a) Cuthill will agree to periodic meetings with the U.S. Attorney or IRS upon reasonable notice (as opposed to ten (10) days as set forth in the Plan); (b) nothing in the Plan or Confirmation Order expands the jurisdiction of the Bankruptcy Court beyond the jurisdiction set forth by applicable Federal Statutes; (c) the Exculpation Clause set forth in Article IX of the Plan shall not eliminate any liability for Allowed tax Claims nor shall it relieve the Liquidating Debtor from its responsibility for timely filing both corporate and payroll tax returns and from timely paying all applicable taxes. Moreover, the Exculpation Clause does not prospectively release the Liquidating Debtor or any responsible person related to federal taxes; and (d) the additional notice provided to the IRS as set forth in Article VI, 5 of the Plan shall apply to both uncashed and returned checks (collectively, (a) - (d) referred to as the "*Ore Tenus* Modifications").

The Court, having considered the: (a) Plan; (b) proffer of counsel at the Hearing; (c) Affidavit of Cuthill in Support of Confirmation ("Confirmation Affidavit") and the Ballot Tabulation ( Doc. No. 368 - Mirabilis, Doc. No. 171 - AEM, Doc. No. 147 - Hoth); (e) the Cramdown Motion; (f) the Objections; (g) the Ore Tenus Modificaitons; and (h) the arguments of all counsel present at the Hearing; and with the Court being familiar with the Plan and other relevant factors affecting this case and having taken judicial notice of the entire record in this case, makes the following findings of fact and conclusions of law pursuant to Rule 7052(a) of the Federal Rules of Bankruptcy Procedure made applicable to this matter pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure:

## I. **Findings of Fact and Conclusions of Law**

A.    Debtors, as proponents of the Plan, have provided good and sufficient notice of: (a) the filing of the Plan and Disclosure Statement; (b) the deadline to file and serve objections to confirmation of the Plan and Disclosure Statement; (c) the deadline and procedures for voting on the Plan; and (d) the hearing date on the confirmation of the Plan;

B.    Debtors have afforded all parties-in-interest with an adequate opportunity to be heard regarding the Plan and Disclosure Statement, and the Plan complies with Bankruptcy Code §1127 and Federal Rule of Bankruptcy Procedure 3019.   All parties received adequate notice in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Balloting Order.

C.    The Court has jurisdiction to conduct the Hearing and to confirm the Plan pursuant to 28 U.S.C. §1334.

D.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(L), and this Court has jurisdiction to enter a final order with respect thereto.

Evergreen Security Ltd.
Case No. 01-00533-6B1                    C:\DOCUME~1\ADMINI~1\LOCALS~1\TEMP\08-K-04327-KSJ-ORDER_CONFIRMING_JOINT_AMENDED_PLAN_OF_LIQUIDATION-8BBRXWHSIF.DOC

3

E.    Mirabilis, Hoth, and AEM are proper Debtors under Section 109 of the Bankruptcy Code.

F.    The Ballot Tabulation filed by the Debtors (as an exhibit to the Confirmation Affidavit) on October 15, 2009, validly and correctly sets forth the tabulation of votes on the Plan, as required by the Bankruptcy Code, Bankruptcy Rules, the Local Rules and the Balloting Order.

G.    The Debtors have solicited and tabulated votes in respect of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Balloting Order.

H.    The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code and the Bankruptcy Rules.

I.    The Plan has been accepted in writing by the requisite majorities of all Impaired Classes of Claims.

J.    The Plan satisfies all of the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponents.  Pursuant to Bankruptcy Rule 3016(c), both the Plan and Disclosure Statement have described in specific and conspicuous language all acts proposed to be enjoined and identified all entities subject to the injunction contained in the Plan.

K.    In accordance with § 1122(a) of the Bankruptcy Code, Article III of the Plan classifies each Claim against and Interest in the Debtors that are substantially similar to such Claims or Interests.  The Plan, therefore, satisfies § 1122(a) of the Bankruptcy Code.

L.    The Plan adequately and properly classifies all Claims and Interests required to be classified, and, accordingly, satisfies § 1123(a)(1) of the Bankruptcy Code.

Evergreen Security Ltd
Case No. 01-00533-6B1                    C:\DOCUME~1\ADMINI~1\LOCALS~1\TEMP\08-04327-KSJ-ORDER_CONFIRMING_JOINT_AMENDED_PLAN_OF_LIQUIDATION-8BBRXWHSIF.DOC

4

M.     Pursuant to Article IV of the Plan, all Classes of Claims are identified as Impaired.   Accordingly, the Plan satisfies § 1123(a)(2) of the Bankruptcy Code.

N.     Article VI of the Plan specifies the treatment of each Impaired Class of Claims and Interests.   Accordingly, the Plan satisfies § 1123(a)(3) of the Bankruptcy Code.

O.     The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment.   Accordingly, the Plan satisfies § 1123(a)(4) of the Bankruptcy Code.

P.     Article IX of the Plan sets forth the means by which the Plan will be implemented. The Plan makes adequate means for its implementation and satisfies § 1123(a)(5) of the Bankruptcy Code.

Q.     Upon the occurrence of the Effective Date, the amended and restated certificate of incorporation of the Liquidating Debtor will contain provisions prohibiting the issuance of non-voting equity securities.   Accordingly, the Plan satisfies § 1123(a)(6) of the Bankruptcy Code.

R.     The Debtors have disclosed the identities of those persons who will serve as officers and directors of the Liquidating Debtor.   Accordingly, the Plan satisfies § 1123(a)(7) of the Bankruptcy Code.

S.     The Plan provides that all executory contracts or unexpired leases will be deemed rejected upon the Effective Date, except for any such contracts or leases that (a) have been assumed or rejected pursuant to final Order of the Bankruptcy Court, (b) are specifically treated in the Plan, or (c) are the subject, as of entry of this Order, of a motion to assume currently pending before the Bankruptcy Court.   The Plan further provides that the entry of the Confirmation Order constitutes approval of such rejections pursuant to §§ 365(a) and 1123(b)(2)

Evergreen Security Ltd
Case No. 01-00533-6B1                    C:\DOCUME~1\ADMINI~1\LOCALS~1\TEMP\08…X-04327-KSJ-ORDER_CONFIRMING_JOINT_AMENDED_PLAN_OF_LIQUIDATION-8BBRXWHSIF.DOC

5

of the Bankruptcy Code, in each case as of, and subject to the occurrence of, the Effective Date. The Debtors' decision regarding the assumption and rejection of executory contracts and unexpired leases is based on and is within their sound business judgment, is necessary to the implementation of the Plan, and is in the best interests of the Debtors, their estates, Holders of Claims, and other parties in interest in this Chapter 11 Case.

      T.     Consistent with the requirements of § 1146(c) of the Bankruptcy Code, the transfer or vesting of any real or personal property of the Debtors or the issuance of any securities in accordance with the Plan or the Confirmation Order, is not subject to taxation under any state or local law imposing a stamp, transfer or similar tax.

      U.     The Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with this Chapter 11 Case.

      V.     The Debtors have properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as well as the Balloting Order. All of the Ballots were properly solicited and tabulated. The Debtors accordingly have satisfied § 1129(a)(2) of the Bankruptcy Code.

      W.     This Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan has been proposed in good faith by the Debtors. The Debtors have acted in good faith in formulating and proposing the Plan and have properly performed their fiduciary duties. All parties have acted in good faith and received no unfair advantage.

X.    Since the Debtors' business has not continued after the Petition Date and the sole goal of the Plan is to generate the maximum amount of Extraordinary Income possible for the benefit of the Holders of Allowed Claims, the Plan does not provide for the discharge of any claims or liabilities.

Y.    On the Effective Date: (i) all assets, and all proceeds thereof, and all liabilities of the Debtors, will be treated as though the assets and liabilities were merged into a single entity which shall be the Liquidating Debtor; (ii) all Intercompany Claims will receive no distribution under the Plan; (iii) any obligation of any Debtors and all Guaranties thereof executed by one or more of the Debtors, and any Claims filed in a case of a Debtor hereof or to be filed in connection with any such obligation and guarantee will be deemed one Claim against the Liquidating Debtor; (iv) each and every Claim filed in the individual Chapter 11 Case of any of the Debtors will be deemed filed against the Liquidating Debtor; and (v) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated for purposes of the Plan as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the Debtors.

Z.    On the Effective Date, the Liquidating Debtor shall receive, retain, and pursue for the benefit of holders of Allowed Claims, any and all Causes of Action belonging to any of the Debtors.  Any rights to claim any legal privileges previously enjoyed by the Debtors shall also vest in the Liquidating Debtor to be exercised by the President.  For purposes of the Plan, the Liquidating Debtor, through its President acting in his or her official, shall be designated as the representative of the Bankruptcy Estates for the retention and enforcement of any Claim or Interest belonging to the Debtors or the Bankruptcy Estates pursuant to 11 U.S.C. §

Evergreen Security Ltd.
Case No. 01-00533-6B1                    C:\DOCUME~1\ADMINI~1\LOCALS~1\TEMP08\BK-04327-KSJ-ORDER_CONFIRMING_JOINT_AMENDED_PLAN_OF_LIQUIDATION-8BBRXWHSIF.DOC

7

1123(b)(3)(B). Any recovery from the Causes of Action will be paid to the holders of Allowed Claims as provided for herein, less the costs of recovering or attempting to recover Extraordinary Income through the Causes of Action and other means.

AA. All payments to be made by Cuthill to Professionals retained by order of the Court for services or for costs and expenses in or in connection with this Chapter 11 Case, through the Confirmation Date, have been or are subject to review and approval by this Court upon the pending, and any supplemental, applications filed under §§ 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies § 1129(a)(4) of the Bankruptcy Code.

BB. Article IX of the Plan provides for post confirmation payment by the Liquidating Debtor of certain fees and expenses of professionals employed by the Liquidating Debtor, without prior Court order, and the Court shall have jurisdiction over this matter only as provided under the Plan.

CC. The Debtors have disclosed the identities, affiliations and compensation of the individuals who will serve as officers and/or directors of the Liquidating Debtor. Cuthill will act as the initial President and the initial Director of the Liquidating Debtor. The appointment, or continuation in office, of such individual is consistent with the interests of creditors and with public policy. Accordingly, the Plan satisfies § 1129(a)(5) of the Bankruptcy Code.

DD. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Section 1129(a)(6) of the Bankruptcy Code is accordingly not applicable.

EE. Each Holder of an Impaired Claim that has not accepted the Plan will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated

under Chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interests" test under § 1129(a)(7)(A)(ii) of the Bankruptcy Code.

FF. Pursuant to the Ballot Tabulations all Impaired Classes of Claims have voted in favor of the Plan. The equity securities representing the Interests in Class 3 (Common Stock) have not voted; however, there is no holder of a junior Interest that will receive or retain any property on account of such Interest. Accordingly, the Plan may be confirmed over the deemed rejection by Class 3, pursuant to § 1129(b)(2)(C) of the Bankruptcy Code.

GG. Article IV, V, and VI of the Plan provide that, as of the Effective Date, all Allowed Administrative Claims and Allowed Priority Tax Claims should be fully satisfied and all Interests shall be extinguished. In the event that any Allowed Priority Tax Claim remains unpaid after the Effective Date, the Liquidating Debtor shall insure that such Allowed Claims are paid prior to making any payments on account of Allowed Class 1 or 2 Claims. Accordingly, the Plan satisfies the requirements of § 1129(a)(9) of the Bankruptcy Code.

HH. The Plan satisfies § 1129(a)(10) of the Bankruptcy Code because an Impaired Class has voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by Insiders.

II. The Plan provides for the payment on the Effective Date (or as soon as practicable thereafter) of all fees payable under § 1930, Title 28, United States Code. The Plan satisfies Section 1129(a)(12) of the Bankruptcy Code.

JJ. It is not the principal purpose of the Plan to avoid taxes or the application of § 5 of the Securities Act of 1933, as amended.

KK. The omission of any reference or specific discussion of all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect and enforceability

as every other provision of the Plan. To the extent of any inconsistencies between the terms of this Confirmation Order and the Plan, the terms of this Confirmation Order shall control, except as otherwise provided herein.

LL. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent Order of this Court or any other court of competent jurisdiction, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order; nor shall such reversal, modification or vacation hereof affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification or vacation hereof, any such obligations incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacation shall be governed in all respects by the provisions hereof and of the Plan, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

MM. The *Ore Tenus* Modifications do not constitute substantial modifications and, thus, no further solicitation is required. The *Ore Tenus* Modification are deemed incorporated into the Plan.

For the foregoing reasons, the Court determines that the Plan should be confirmed. Accordingly, it is hereby

**ORDERED:**

1. The Plan is in all respects confirmed pursuant to § 1129 of the Bankruptcy Code and all of its terms and provisions are approved. The Debtors and Liquidating Debtor are authorized and directed to take any and all actions contemplated to be taken by it under the Plan.

2.      The Objections are overruled. With respect to the objections filed by the adversary proceeding defendants: Hans C. Beyer, et al., Rachlin Cohen & Holtz, LLP, Richard E. Berman, et al., and James Moore & Co, PL, and notwithstanding anything herein to the contrary, neither the Plan nor this Confirmation Order shall be construed in any way to create, expand or modify the jurisdiction of this Court with respect to the above-named objecting parties. Furthermore, the above-named objecting parties have not submitted themselves to the jurisdiction of this Court by the filing of the objections.

3.      The Cramdown Motion is granted.

4.      In accordance with § 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Debtors, Liquidating Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are Impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed a proof of Claim or proof of Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of Property to or from the Debtor.  The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction of all Claims and Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Order for Relief, against, the Liquidating Debtor or its property or interests in property.

5.      The provisions of this Confirmation Order will become operative on the Effective Date.

6.      In accordance with §§ 524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan and this Confirmation Order on and after the Effective Date all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest, seeking to hold liable:    (a) the Liquidating Debtor and all officers and directors noted in the Confirmation Affidavit; and (b) the property of Liquidating Debtor, for any claim, obligation, right, interests, debt or liability that has been discharged or released pursuant to the Plan and for any and all claims arising under bankruptcy or nonbankruptcy law relating in any way to the Debtors, Liquidating Debtor or its business, except for any claims or actions related to gross negligence or willful misconduct.

7.      In accordance with § 1141(b) of the Bankruptcy Code and the Plan, title to the Debtors' assets, shall vest in the Liquidating Debtor on the Effective Date.   Until the Effective Date, the Debtors and Cuthill shall continue to perform their duties under the Code.   Except as otherwise expressly provided in the Plan and in this Confirmation Order, all assets and property of the Debtors shall be vested in the Liquidating Debtor, free and clear of all Liens, security interests, Claims and Interests of holders of Claims or Interests, and all such Liens, security interests, Claims and Interests are hereby extinguished.

8.      The provisions of Articles VI and IX of the Plan, governing distributions, reserves and procedures for resolving and treating disputed claims in Class 2 of the Plan, are found to be fair and reasonable and are hereby approved.

9.      Payment of all Allowed Claims of Professionals for fees and/or expenses, as provided herein, shall be paid on the date on which any Order authorizing the payment of such fees and/or expenses to such professional becomes a Final Order.

Evergreen Security Ltd.
Case No. 01-00533-6B1                    C:\DOCUME~1\ADMINI~1\LOCALS~1\TEMP\08804327-KSJ-ORDER_CONFIRMING_JOINT_AMENDED_PLAN_OF_LIQUIDATION-8BBRXWHSIF.DOC

42

10.    The Debtors shall comply with all terms and conditions of the Plan, which terms and conditions are incorporated herein by reference.

11.    The Debtors are hereby authorized and directed to execute any necessary documents to meet the statutory requirements if any, for filing necessary papers with the State of Florida or any other jurisdiction to effectuate the terms of the Plan.

12.    The Debtors are hereby vested with the rights and powers granted to the Debtors pursuant to § 1107(a) of the Bankruptcy Code with respect to the allowance, treatment or avoidance of Liens or Claims which remain unresolved as of the Effective Date.

13.    The President of the Liquidating Debtor is hereby appointed as the representative of the Estate pursuant to 11 U.S.C. § 1123(b)(3)(B) for the purpose of retaining and enforcing the Causes of Action.

14.    Upon the Effective Date, the President, on behalf of the Liquidating Debtor, shall have the right, and be vested with the authority, to seek adjudication of the Causes of Action. Such rights shall be transferred to the Liquidating Debtor for the benefit of Class 2 Creditors as of the Effective Date, and the President, as representative of the estate, and subject to the relevant provisions and limitations set forth in the Plan, shall have the right and be fully vested with the authority to assert and prosecute such Causes of Action, and to prosecute, settle or compromise any such  Causes of Action, for the benefit of Class 2 Creditors.

15.    Upon the Effective Date, all executory contracts and unexpired leases of the Debtors not previously assumed by Order of this Court or subject to a pending motion to assume shall be deemed rejected, unless such contracts or leases were or are otherwise assumed pursuant to the Plan.  Parties to such rejected leases and contracts are required to submit their claims for rejection damages, if any, pursuant to the provisions of 11 U.S.C. § 502(g), within 30 days

hereof. All of the Debtors' right, title and interest in any contracts, leases or agreements entered into by the Debtors after the Petition Date, and/or not subject to assumption or rejection under § 365 of the Bankruptcy Code, shall vest in the Liquidating Debtor without further action on the Effective Date.

16.  In accordance with § 1145 of the Bankruptcy Code, the offer or issuance, sale, exchange or other transfer by the Debtors of any security in accordance with the Plan or this Confirmation Order,  is hereby declared exempt from: (a) the provisions of § 5 of the Securities Act of 1933, as amended (15 U.S.C. §77(e), as amended); and (b) any state or local law requiring registration for the offer or sale of a security or registration or licensing of the issuer or an affiliate thereof as an underwriter, broker or dealer in securities.

17.  Pursuant to § 1146(c) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, or similar tax.  All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and/or recorded, without the payment of any such taxes.

18.  All entities holding Claims against or Interests in the Debtors that are treated under the Plan are hereby directed to execute, deliver, file or record any document, and to take any action necessary to implement, consummate and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

19.     In accordance with § 1142 of the Bankruptcy Code, the Debtor, the Liquidating Debtor and any other entity designated pursuant to the Plan are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan.

20.     The Debtors are hereby authorized upon subsequent order of the Bankruptcy Court, to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with § 1127 of the Bankruptcy Code and the Plan.

21.     The Debtors shall pay to the United States Trustee the fees imposed pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of the entry of this Order for preconfirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.

22.     The Liquidating Debtor shall further pay to the United States Trustee the fees imposed pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of this case by the issuance of Final Decrees by the Court, or until the entry of Orders by this Court dismissing this case or converting this case to another chapter under the Bankruptcy Code.  The Liquidating Debtor shall provide to the United States Trustee, upon the payment of each post-confirmation payment, an appropriate affidavit indicating all the cash disbursements for the relevant period.

23.     Until this case is closed through the entry of a final decree, the Court shall retain jurisdiction pursuant to Rule 3020(d) to ensure that the provisions and the intent of the Plan are

carried out. The Court shall also retain jurisdiction to hear and determine all claims against the Debtor; to hear, determine, and enforce all Causes of Action arising in, arising under, or related to this Case and which may exist on behalf of the Debtors, or the Liquidating Debtor; to hear and resolve all objections to the fees or expenses of Professionals or others as provided for in the Plan; and to confirm, after proper notice and hearing, any proposed sale of assets (although after the Effective Date no such sale of assets would require Bankruptcy Court approval). Nothing contained herein shall prevent the Debtors or the Liquidating Debtor from taking such action as may be necessary in the prosecution of any cause of action which may exist on its or on the Debtors' behalf and nothing contained herein shall prevent any creditor from enforcing any claim it may have against third parties who may be liable as a result of the Debtors' obligation to such creditor except as specifically provided for herein.

24. In the event the Liquidating Debtor fails to follow the provisions of M.D. Fla. L.B.R. 3022-1, Liquidating Debtor shall file a report within ninety (90) days from the date of the Confirmation Order, setting forth the progress made in consummating the Plan. The Report shall include:

    (a)    a statement of distribution by Class, name of Creditor, date of distribution, and amounts paid;

    (b)    a statement of transfer of property; and

    (c)    a statement of affirmation that Liquidating Debtor has substantially complied with the provisions of the confirmed Plan.

25. Within five (5) days after the entry of this Confirmation Order, the Liquidating Debtor shall mail to all known Creditors and Holders of Interests and all other parties in interest (including Professionals) copies of this Confirmation Order.

26.     This Confirmation Order shall be deemed to constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority, whether foreign or domestic, or judicial or administrative body, whether foreign or domestic, with respect to the implementation or consummation of the Plan.

27.     Hereafter, the only parties to whom notices of matters and proceedings shall be given, and on whom service of pleadings is required shall be limited to the Liquidating Debtor, care of the President and his professionals, and the United States Trustee, by notifying or serving them and their respective counsel of record at the following addresses:

> Liquidating Debtor
> c/o R.W. Cuthill, Jr.
> 341 N. Maitland Ave., Ste. 210
> Maitland, FL 32751
>
> With a copy to:
>
> R.Scott Shuker
> Latham, Shuker, Eden & Beaudine, LLP
> PO Box 3353
> Orlando, FL    32801
>
> United States Trustee:
> 135 West Central Blvd, Suite 620
> Orlando, Florida 32801

28.     Pursuant to the provisions of Bankruptcy Rule 3020(e), the ten-day stay otherwise required is hereby waived, and this Confirmation Order shall become effective immediately upon

entry, and the Effective Date shall occur as soon as the conditions precedent to effectiveness set forth in the Plan have occurred or been waived as provided for in the Plan.

**DONE AND ORDERED** on October 27, 2009.

_(signature)_

**KAREN S. JENNEMANN**
United States Bankruptcy Judge

Copies to:

Debtor: R. W. Cuthill, Jr., 341 N. Maitland Ave., Suite 210, Maitland, Florida 32751;

Debtor's Counsel:  R. Scott Shuker, Esq., Latham, Shuker, Eden & Beaudine, LLP, PO Box 3353, Orlando, Florida 32802-3353;

Office of the United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801; and

All Creditors & Interested Parties

Evergreen Security Ltd.
Case No. 01-00533-6B1          C:\DOCUME~1\ADMINI~1\LOCALS~1\TEMP\08-04327-KSJ-ORDER_CONFIRMING_JOINT_AMENDED_PLAN_OF_LIQUIDATION-8BBRXWHSIF.DOC

18