UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC., and
HOTH HOLDINGS, LLC,

                Debtors.

_____/

RACHLIN, COHEN & HOLTZ, LLP,
and FORGE CAPITAL PARTNERS,

                Appellants,

vs.

MIRABILIS VENTURES, INC., and
HOTH HOLDINGS, LLC,

                Appellees.

_____/

Bkry Case Nos. 6:08-bk-04327-KSJ and
6:08-bk-04328-KSJ

Consolidated

Case No.: 6:09-cv-01658-GAP

ON APPEAL FROM THE ORDER OF THE
UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

ANSWER BRIEF OF APPELLEES,

R. SCOTT SHUKER, ESQ.
Florida Bar No.: 984469
MARIANE L. DORRIS, ESQ.
Florida Bar No.: 0173665
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. Orange Avenue, Suite 600
Orlando, Florida 32802-3353
Telephone (407) 481-5800
Facsimile (407) 481-5801
Attorneys for Appellees

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.     THE BANKRUPTCY COURT DID NOT ABUSE
          ITS DISCRETION IN DENYING THE MOTIONS
          TO DISMISS, OR IN THE ALTERNATIVE, TO
          CONVERT TO CASES UNDER CHAPTER 7,
          APPELLEES' BANKRUPTCY CASES PURSUANT
          TO 11 U.S.C. §1112 (B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          A.    Mirabilis had the requisite corporate authority to
               file a voluntary petition for relief under Chapter 11 . . . . . . . . . . . . 10

          B.    The doctrines of *in pari delicto* and alter ego do
               not prevent Mirabilis from filing a voluntary petition
               for relief under Chapter 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          C.    The Appellees' voluntary petitions were filed for
               a valid bankruptcy purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          D.    Given the circumstances of the Appellees' bankruptcy
               cases, it was in the best interests of creditors and the
               estates to deny the motions to dismiss or convert. . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,
    526 U.S. 434 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Bush v. Balfour Beatty Bahamas Ltd. (In re Bush),
    62 F.3d 1319 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cuthill v. Greenmark, LLC et al. (In re World Vision Entertainment, Inc.),
    275 B.R. 641 (Bankr. M.D. Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Albany Partners, Ltd.,
    749 F. 2d 670 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re All American of Ashburn, Inc,
    40 B.R. 104 (Bankr. N.D. Ga. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Alves Photo Serv., Inc.,
    6 B.R. 690 (Bankr. D. Mass 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

In re Auto-Train Corporation,
    810 F. 2d 270 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Autumn Press, Inc.,
    20 B.R. 60 (Bankr. D. Mass. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Bonham,
    229 F. 3d 750 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Consol. Auto Recyclers, Inc.
    123 B.R. 130 (Bankr. D. Me. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

In re Continental Vending Machine Corp.,
    517 F. 2d 997 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

ii

In re Crown Village Farm, LLC,
     2009 WL 1651385 (Bankr. D. Del. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Felt Manufacturing Co., Inc.,
     371 B.R. 589 (Bankr. D.N.H. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Fisher,
     2008 WL 1775123 (Bankr. D. Mont. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

In re Food Management Group, LLC,
     2008 WL 183410 (Bankr. S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Fuzion Technologies Group,
     332 B.R. 225 (Bankr. S.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Gateway Access Solutions, Inc.,
     374 B.R. 556 (Bankr. M.D. Pa. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Marks,
     131 B.R. 220 (S.D. Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Orbit Petroleum, Inc.,
     395 B.R. 145 (Bankr. D. N.M. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

In re Pittsfield Weaving Co.,
     393 B.R. 271 (Bankr. D. N.H. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

In re SGL Carbon Corp.,
     200 F. 3d 154 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re The Bennett Funding Group, Inc.,
     367 B.R. 302 (Bankr. N.D. N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Tracey Service Co., Inc.,
     17 B.R. 405 (Bankr. E.D. Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Wiand,
     2007 WL 963165 (M.D. Fla. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Western World Funding, Inc.,
        52 B.R. 743 (Bankr. Nev. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In the Matter of Nancant,
        8 B.R. 1005 (Bankr. D. Mass. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Keenihan v. Heritage Press Inc.,
        19 F. 3d 1255 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LFC Marketing Group, Inc. v. Loomis,
        8 P. 3d 841 (Nev. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Loop Corp. V. United States Trustee,
        379 F. 3d 511 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Moody v. Amoco Oil Co.,
        734 F.2d 1200 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NMSBPCSLDHB, LP v. Integrated Telecom Express, Inc.,
        384 F. 3d 108 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 218

Official Comm. of Unsecured Creditors of PSA v. Edwards,
        437 F. 3d 1145 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

O'Halloran v. PricewaterhouseCoopers LLP,
        969 So. 2d 1039 (Fla. 2d DCA 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Price v. Gurney,
        324 U.S. 100 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. United States Gypsum Co.,
        333 U.S. 364 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL STATUTES**

11 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 U.S.C. § 109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

11 U.S.C. § 1112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

11 U.S.C. § 1123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL RULES**

Fed. R. Bankr. P. 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**OTHER AUTHORITIES**

N.R.S. §78.120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC.,
and HOTH HOLDINGS, LLC,

Debtors.
_____/

RACHLIN, COHEN & HOLTZ,
LLP, and FORGE CAPITAL
PARTNERS,

Appellants,

vs.

MIRABILIS VENTURES, INC.,
and HOTH HOLDINGS, LLC,

Appellees.
_____/

Bkry Case Nos. 6:08-bk-04327-KSJ and
6:08-bk-04328-KSJ

Consolidated

Case No.: 6:09-cv-01658-GAP

## ANSWER BRIEF OF APPELLEES

## STATEMENT OF ISSUES

1.  Whether the bankruptcy court abused its discretion in denying the motions to dismiss, or in the alternative, to convert to cases under Chapter 7, Appellee's bankruptcy cases pursuant to 11 U.S.C. §1112(b).

1

## STANDARD OF APPELLATE REVIEW

A Bankruptcy Court's denial of a motion to dismiss a Chapter 11 bankruptcy petition for want of good faith is reviewed for an abuse of discretion. NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F. 3d 108, 118 (3d Cir. 2004). "[A]n abuse of discretion exists where the [bankruptcy] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." Id. Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. A bankruptcy court's findings of fact is clearly erroneous only when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). The bankruptcy court's conclusions of law are reviewed *de novo*. See Bush v. Balfour Beatty Bahamas Ltd. (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995) (citation omitted). *De novo* review requires the Court to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and conclusions." Moody v. Amoco Oil Co., 734 F.2d 1200, 1210 (7th Cir. 1984). Where an issue raises a mixed question of law and fact, District Courts are instructed to review a bankruptcy court's determination *de novo*. See In re Marks, 131 B.R. 220, 222 (S.D. Fla. 1991), aff'd, 976 F.2d 743 (11th Cir. 1992).

2

## STATEMENT OF THE CASE

This case concerns the interpretation and application of the Bankruptcy Code with respect to a motion to dismiss a Chapter 11 bankruptcy petition, or in the alternative, to convert to a case under Chapter 7. The Appellants, Forge Capital Partners, LLC f/k/a Moreco Partners, LLC, Argent Capital Advisors, LLC f/ka Atlantic American Capital Advisors, LLC, Argent BD, LLC, Argent BD Transition, LLC, Robert Moreyra, Peter Collins, Bison Mortgage Corp., and Solutions Funding, Inc. (collectively, the "Forge Creditors"), argue that the Bankruptcy Court erred in denying the motions to dismiss the Chapter 11 bankruptcy petitions of Mirabilis Ventures Inc. ("Mirabilis") and Hoth Holdings LLC ("Hoth"), or in the alternative, to convert to cases under Chapter 7 ("Dismissal Motions") because: (i) Mirabilis lacked the corporate authority to file a voluntary petition for relief; (ii) the doctrines of *in pari delicto* and alter ego divest Mirabilis of standing to file a voluntary petition for relief; and (iii) the Chapter 11 bankruptcy petitions were filed in bad faith. The Appellees, Mirabilis and Hoth, argue that the Bankruptcy Court did not abuse its discretion in denying the Dismissal Motions because: (i) pursuant to applicable Nevada state law, Mirabilis had the corporate authority to file a Chapter 11 petition; (ii) the equitable doctrines of the *in pari delicto* and alter ego are irrelevant in determining whether the Appellees can file bankruptcy petitions; (iii) the Chapter 11 petitions were filed for a valid bankruptcy purpose; and (iv) given the circumstances of the bankruptcy cases of Mirabilis and Hoth, dismissal or conversion was not in the best interests of creditors and the estates.

3

In addition to the above ground to deny the instant appeal, on February 5, 2010, the Appellees' filed a motion to dismiss these consolidated appeals as moot for the reason that Appellee's Plan (as defined *supra*) has been confirmed by the Bankruptcy Court, the Confirmation Order (as defined *supra*) is a final, non-appealable order, the Plan has been substantially consummated, and effective relief is no longer available to the Appellants in these appeals. District Court Doc. No. 18. The Appellees hereby adopt and incorporate by reference in this answer brief the arguments set forth in the motion to dismiss.

On October 28, 2004, an entity known as Stellar Industries, Inc., a Nevada corporation, changed its name to Mirabilis Ventures Inc. Originally, Mirabilis had only one shareholder, Yaniv Amar, and only one director, Gaile Hartman. Doc. No. 237, ¶ 1[1]. On October 1, 2005, Mirabilis, by written consent of the board of directors, adopted its bylaws (the "2005 Bylaws"). Doc. No. 237, ¶ 2, Exhibit A. The 2005 Bylaws were not adopted by the stockholders of Mirabilis. Doc. No. 237, ¶ 7. On May 27, 2008, the board of directors of Mirabilis, by written consent, amended the 2005 Bylaws with respect to the provisions related to vacancies (Section 3.04) and amendment of the bylaws (Section 9.02). Doc. No. 237, ¶ 10, Exhibit D. Pursuant to the revised Section 3.04 of the amended bylaws ("Amended Bylaws"), the two remaining directors appointed Mr. Michael Moecker as the third director. See id. Upon the resignation of Shane Williams and Jay Stollenwerk, Mr. Moecker, as the

---

[1] Unless otherwise noted, citations to the record on appeal will be reflected as citations to docket in the Mirabilis bankruptcy case styled *In re Mirabilis Ventures Inc.*, case no. 6:08-bk-04327-KSJ, pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

sole remaining director, elected Mr. Cuthill as President and authorized Mr. Cuthill, on behalf of

Mirabilis, to file Chapter 11 bankruptcy petitions. <u>Doc. No. 237</u>, ¶ 11, <u>Exhibit E</u>.

On May 27, 2008, ("Petition Date") Mirabilis and Hoth filed voluntary petitions for relief under

Chapter 11 of the Bankruptcy Code. <u>Doc. No. 1</u>. On June 5, 2008, AEM, Inc. ("AEM") also filed

a Chapter 11 bankruptcy petition (collectively, Mirabilis, Hoth, and AEM shall be referred to as

"Debtors"). The Chapter 11 filings came primarily as a result of an *in rem* civil forfeiture action

commenced by the United States Attorney ("US Attorney") on behalf of the United States of America

("United States") against certain assets of Mirabilis, which effectively caused Mirabilis to be unable to

collect assets and pursue claims and litigation against various third parties[2]. <u>Doc. No. 185</u>, ¶ 2. The

*in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Amodeo[3]. In an

effort to preserve equity for all creditors, Mirabilis and Hoth deemed a Chapter 11 liquidation plan as

in the best interest of all creditors. <u>See</u> <u>id.</u>

Although the US Attorney did not originally approve of the filing of the Chapter 11 bankruptcy

petitions and the use of the Bankruptcy Code to liquidate the assets of the Debtors for the benefit of all

creditors, the United States did ultimately agree that is was in the best interests of all parties to have

---

[2] On April 25, 2008, the US Attorney instituted *in rem* civil forfeiture proceedings ("Civil Complaint"), in the United States District Court for the Middle District of Florida, case no. 6:08-cv-00670-ACC-KRS, against certain property owned by Mirabilis. On September 4, 2008, the US Attorney amended the Civil Complaint to add additional property, some of which was owned by Mirabilis. On October 30, 2008, the US Attorney indicted AEM and Mirabilis for conspiracy, wire fraud, and forfeiture; case no. 6:08-cr-00231-JA-KRS. AEM and Mirabilis have not been convicted and have not pled guilty to any of the counts set forth in the indictment.

[3] On August 6, 2008, the US Attorney indicted Frank L. Amodeo for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation; case no. 6:08-cr-176-Orl-28-GJK.

5

some of the assets administered in the bankruptcy proceedings. On August 14, 2008, the US Attorney

filed a motion to intervene and stay the bankruptcy case of Mirabilis ("Stay Motion"). Doc. No. 48.

In the Stay Motion, the US Attorney sought to stay the Mirabilis bankruptcy case in order to pursue a

forfeiture and seizure action against property of the Debtors' estates which would "become property

of the United States and [would] not remain in the related bankruptcy estates." Doc. No. 48, ¶ 6. If

granted, the United States would have seized substantially all of Mirabilis' assets. On September 24

and 25, 2008, the US Attorney filed motions to dismiss the Debtors' bankruptcy cases based upon

allegations of bad faith (the "USA Dismissal Motions") Doc. No. 41. On October 3, 2008, the Forge

Creditors joined in the USA Dismissal Motions in the Mirabilis and Hoth bankruptcy cases ("Forge

Dismissal Motions")[4]. Doc. No. 88.

      The Forge Creditors consist of a group of entities controlled by Robert Moreyra and Peter

Collins. Doc. No. 237 ¶20. The Forge Creditors, as well as Mr. Moreyra and Mr. Collins, were

intimately involved in obtaining and running businesses for Mirabilis. See id. at ¶21. In addition, related

entities of the Forge Creditors were also the subject of a fraudulent transfer action filed in the Hoth

bankruptcy case styled *Hoth Holdings, LLC v. Coastal Equity Partners, LLC and Bison Mortgage

Corp.*, case no. 6:08-ap-148-KSJ. See id. at ¶22. Prior to the Petition Date, the Forge Creditors

---

[4] On April 23, 2009, Rachlin Cohen & Holtz, LLP, Laurie S. Holtz and Jose I. Marrero (collectively, "Rachlin") also filed a motion to dismiss the Mirabilis bankruptcy case (the "Rachlin Dismissal Motion"). Doc. No. 183. Rachlin is not a creditor of the Appellees, but a defendant in a malpractice lawsuit styled *Mirabilis Ventures Inc. v. Marcum Rachlin et al.*, case no. 6:08-ap-00223-KSJ. The Forge Dismissal Motions and the Rachlin Dismissal Motion raise substantially the same factual and legal arguments.

were defendants in a state court lawsuit instituted by Mirabilis in the Circuit Court in and for Orange

County, Florida. See id. at ¶23.

On November 25, 2008, the Debtors and the US Attorney reached a settlement agreement with

respect to the Stay Motion and the USA Dismissal Motion, and filed a motion for approval of

compromise of controversy by and between Debtors and the United States (the "Settlement"). Doc.

No. 101. Pursuant to the terms of the Settlement, the Debtors and the US Attorney agreed that it would

be in the best interests of all parties to agree to the administration of the Debtors' assets, and have part

of the administration occur in the bankruptcy cases. Doc. No. 101, ¶24-31. The Settlement provides

for: (i) the division of assets between the bankruptcy estates and the United States; (ii) the allowance

of a $200,000,000 unsecured forfeiture claim; (iii) a liquidation plan of reorganization and the

consolidation of the Debtors' bankruptcy estates; and (iv) all pending motions filed by the US Attorney

in the bankruptcy cases and by the Debtors against the United States to be withdrawn with prejudice

upon approval of the Settlement. Id. The Settlement was ultimately approved by the Bankruptcy

Court's order approving the Settlement entered on March 4, 2009. Doc. No. 145. Pursuant to the

Settlement, on June 3, 2009, Mirabilis amended Schedule F to provide for the $200,000,000 unsecured

forfeiture claim. Doc. No. 194. At the time the Settlement was reached, the Debtors had a pending

Joint Amended Plan of Liquidation, which was filed on August 14, 2009. Doc. No. 234. The Joint

Amended Plan of Liquidation was subsequently modified on October 15, 2009 (collectively, the "Plan")

and confirmed on October 27, 2009 (the "Confirmation Order"). Doc. No. 375. As contemplated by

the Settlement, the Plan incorporated the terms of the Settlement and the United States, the holder of

ninety percent (90%) of the general unsecured claims, voted in favor of the Plan. The United States is

the majority creditor of the Debtors.

On August 26, 2009, the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure

7052, stated orally in open court the findings of fact and conclusions of law denying the Forge Dismissal

Motions and the Rachlin Dismissal Motion. Specifically, the Bankruptcy Court made the following

findings of fact and conclusions of law: (i) due to the fact that the 2005 Bylaws were not adopted by the

stockholders of Mirabilis, Article 8 of Mirabilis' Articles of Incorporation reserves the right of Mirabilis

to amend its bylaws, and Nevada state law permits directors to amend a corporation's bylaws

unilaterally, the subsequent appointment of Mr. Moecker and Mr. Cuthill was authorized, as well as the

filing of the Chapter 11 bankruptcy petitions; (ii) the filing of a Chapter 11 bankruptcy petition with the

intent to maximize the recovery of assets for the benefit of creditors through a liquidating plan is not bad

faith; and (iii) the issues of alter ego liability and the doctrine of *in pari delicto*, both based solely upon

hearsay evidence of Mr. Amodeo, are not sufficient "cause" to override the "potentiality of significant

distribution to a group of very legitimate creditors ..." August 26, 2009 Transcript, pp. 5-7, 11-15. On

September 2, 2009, the Bankruptcy Court entered an order denying the Forge Dismissal Motions and

the Rachlin Dismissal Motion ("Order Denying Dismissal"). Doc. No. 268. On September 14, 2009,

both the Forge Creditors and Rachlin filed notices of appeal of the Order Denying Dismissal.

With respect to the Order Denying Dismissal, the Bankruptcy Court's findings of fact that the

filing of the Chapter 11 bankruptcy petitions were validly authorized by the Debtors was not clearly

erroneous. Furthermore, the Bankruptcy Court did not err in determining that the Chapter 11 Petitions

8

were not filed in bad faith and that due to the circumstances of these bankruptcy cases, it was in the best

interests of all creditors and the estates to remain under Chapter 11. Accordingly, the Bankruptcy

Court's decision should be affirmed.

## ARGUMENT

I.   THE BANKRUPTCY COURT DID NOT ABUSE
     ITS DISCRETION IN DENYING THE MOTIONS
     TO DISMISS, OR IN THE ALTERNATIVE, TO
     CONVERT TO CASES UNDER CHAPTER 7,
     APPELLEES' BANKRUPTCY CASES
     PURSUANT TO 11 U.S.C. §1112 (B).

The Chapter 11 bankruptcy petitions filed by Mirabilis and Hoth were filed with the requisite

corporate authority, in good faith with the intent to serve a valid bankruptcy purpose, and in the best

interests of all creditors and the estates. Pursuant to 11 U.S. C. § 1112(b), the court shall convert a

case under Chapter 11 to a case under Chapter 7 or dismiss a case, if the movant establishes cause.

11 U.S.C. §1112(b)(1). However, even if "cause" is established, the court need not order conversion

or dismissal if: (i) the court specifically finds unusual circumstances that establish the requested

conversion or dismissal is not in the best interests of creditors and the estate; and (ii) the debtor

establishes that there is a reasonable likelihood that a plan will be confirmed within a reasonable period

of time. 11 U.S.C. §1112(b)(2)(A). In addition, Section 1112(b)(4) of the Bankruptcy Code identifies

sixteen factors which may constitute cause for dismissal or conversion. §1112(b)(4)(A)-(P). While

Section 1112(b)(4) of the Bankruptcy Code does not include the issue of corporate authority, the list

is nonexclusive. See In re Consol. Auto Recyclers, Inc., 123 B.R. 130, 137 n. 41 (Bankr. D. Me.

9

1991) (citing In re Alves Photo Serv., Inc., 6 B.R. 690, 694 (Bankr. D. Mass. 1980)).  In the instant case, the Appellants failed to establish "cause" for the dismissal or conversion of the Appellees' bankruptcy petitions.

A.     Mirabilis had the requisite corporate authority to file a
       voluntary petition for relief under Chapter 11.

The Bankruptcy Code does not set forth specific requirements for a corporation to file bankruptcy, other than requiring the petition to be "voluntary".  See 11 U.S.C. §301.  The authority to file a bankruptcy petition on behalf of a corporation must derive from state law.  Keenihan v. Heritage Press, Inc., 19 F. 3d 1255, 1258 (8th Cir. 1994) (citing Price v. Gurney, 324 U.S. 100, 106-07, 65 S. Ct. 513, 516-17, 89 L. Ed. 776 (1945)).  "[T]he Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding.  It is therefore appropriate to apply ... [the law] of the state in which the Court sits regarding such requirements."  In re Autumn Press, Inc., 20 B.R. 60, 61 (Bankr. D. Mass. 1982).

In the instant case, on October 1, 2005, Mirabilis, by written consent of the board of directors ("Board"), adopted its bylaws (the "2005 Bylaws").  Doc. No. 237, ¶ 2, Exhibit A.  The 2005 Bylaws were not adopted by the stockholders of Mirabilis.  Doc. No. 237, ¶ 7.  Section 9.02 of the 2005 Bylaws provides that the Board may amend or repeal Mirabilis' bylaws unless (a) the Articles of Incorporation or other provisions of law reserve the power to amend the bylaws (or a particular provision thereof) exclusively to the shareholders, or (b) the shareholders, by a bylaw provision or amendment thereto, provide expressly that the Board may not amend or repeal the bylaws (or a

10

particular provision thereof). <u>Doc. No. 237</u>, <u>Exhibit A</u>. Neither the Articles of Incorporation nor other

provisions of law reserve the power to amend the bylaws exclusively to the shareholders. <u>See id</u>.

Furthermore, the 2005 Bylaws were appropriately adopted by the Board, not the shareholders, so there

are no shareholder-adopted bylaws which provide that the Board may not amend or repeal the 2005

Bylaws.

      Section 9.03 of the 2005 Bylaws provides that the 2005 Bylaws shall be subject to, and

governed by, Mirabilis' Articles of Incorporation. <u>Doc. No. 237</u>, <u>Exhibit B</u>. Article VIII of the Articles

provides that Mirabilis reserves the right to amend provisions in the 2005 Bylaws in the manner now or

hereafter prescribed by statute or by the Articles or by the 2005 Bylaws and "all rights conferred upon

the stockholders are granted subject to this reservation." <u>Doc. No. 237</u>, <u>Exhibit B</u>, Article VIII. This

provision in Article VIII of the Articles is written in the disjunctive and gives the Board the authority to

amend the 2005 Bylaws as provided by statute, the Articles or the 2005 Bylaws. Article IX of the

Articles provides that in furtherance and not in limitation of powers conferred by statute, the Board is

expressly authorized, subject to the bylaws, if any, adopted by the shareholders, to make, alter or repeal

the 2005 Bylaws. The stockholders of Mirabilis never adopted any bylaws. Furthermore, Section

78.120 of the Nevada Revised Statutes also provides that "[u]nless otherwise prohibited by any bylaw

adopted by the stockholders, the directors **may adopt, amend, or repeal any bylaw, including any**

**bylaw adopted by the stockholders**." <u>NRS § 78.120(2)</u> (2005) (emphasis added). Since the 2005

Bylaws were not adopted by the stockholders and the Articles and Nevada state law empower the

directors to amend the 2005 Bylaws, the Board is not subject to any limitation related to the amendment of the 2005 Bylaws.

Acting by written consent dated May 27, 2008 ("Written Consent"), pursuant to the authority granted and/or reserved to the Board to amend the 2005 Bylaws as provided in the Articles and Nevada state law, the then currently serving and duly elected Board exercised such authority and, among other things, amended the 2005 Bylaws with respect to the provisions related to vacancies (Section 3.04) and amendment of the bylaws (Section 9.02). Doc. No. 237, Exhibit D. Pursuant to the revised Section 3.04 of the amended 2005 Bylaws (the "Amended Bylaws"), the two remaining directors appointed Mr. Michael Moecker as the third director. See id. Upon the resignation of Shane Williams and Jay Stollenwerk, Mr. Moecker, as the sole remaining director, elected Mr. Cuthill as President and authorized Mr. Cuthill, on behalf of Mirabilis, to file Chapter 11 bankruptcy petitions. Doc. No. 237, Exhibit E. Accordingly, there was valid corporate authority to file the voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Bankruptcy Court was not clearly erroneous in finding that due to the fact that the 2005 Bylaws were not adopted by the stockholders of Mirabilis, Article 8 of Mirabilis' Articles of Incorporation reserves the right of Mirabilis to amend its bylaws, and Nevada state law permits directors to amend a corporation's bylaws unilaterally, the subsequent appointment of Mr. Moecker and Mr. Cuthill was authorized, as well as the filing of the Chapter 11 bankruptcy petitions. Accordingly, this Court should affirm the Bankruptcy Court's ruling denying the motion to dismiss for lack of corporate authority.

12

B.    The doctrines of *in pari delicto* and alter ego do not
      prevent Mirabilis from filing a voluntary petition for
      relief under Chapter 11.

The Appellants argue that the doctrines of *in pari delicto* and alter ego prevent the

Debtors from filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and qualifying

as a "debtor", because of the criminal business activities of Mr. Amodeo. The Appellants have cited

no authority, either statutory or judicial, for this legal proposition. The Appellants rely solely on two

equitable theories, one of defense (*in pari delicto*) and one of liability (alter ego), which have no

application in determining whether an entity may be a "debtor." To the contrary, Sections 101, 109 and

301 of the Bankruptcy Code define an entity which may be a debtor under such chapter to include

individuals, partnerships, and corporations, who reside or have a domicile, a place of business, or

property in the United States. See 11 U.S. C. §§ 101, 109, 301. There is no requirement that the

debtor be a lawful enterprise or have acquired its property through legitimate means. Furthermore, case

law is replete with examples of debtors who have conducted illegal business activities and subsequently

been subject to the jurisdiction of a bankruptcy court. See Cuthill v. Greenmark, LLC et al. (In re Worl

Vision Entertainment, Inc.), 275 B.R. 641 (Bankr. M.D. Fla. 2002); see also In re The Bennett Funding

Group, Inc., 367 B.R. 302 (Bankr. N.D. N.Y. 2007).

The doctrine of *in pari delicto* prohibits a wrongdoer from profiting from his own

wrongful acts. Official Comm. of Unsecured Creditors of PSA v. Edwards, 437 F. 3d 1145, 1149-50

(11th Cir. 2006). "The doctrine of *in pari delicto* is based on the policy that courts should not lend their

good offices to mediating disputes among wrongdoers and denying judicial relief to an admitted

13

wrongdoer is an effective means of deterring illegality." Id. at 1152. The doctrine is both an affirmative

defense and an equitable defense. In re Felt Manufacturing Co., Inc., 371 B.R. 589, 608 (Bankr.

D.N.H. 2007); O'Halloran v. PricewaterhouseCoopers LLP, 969 So. 2d 1039, 1043 (Fla. 2d DCA

2007). However, the doctrine of *in pari delicto* does not apply to every cause of action or request for

relief. "[T]he *in pari delicto* defense is inapplicable when a trustee brings an action under sections

544(a), 544(b), or 548, but the defense applies under section 541." In re Fuzion Technologies Group,

Inc., 332 B.R. 225, 232 (Bankr. S.D. Fla. 2005). Furthermore, the defense of *in pari delicto*, "is not

an absolute standard that can be applied across the board regardless of the circumstances." Id. at 233.

In evaluating the defense, the court must determine whether the guilt of the plaintiff "is far less in degree

than defendant's, so as to make the doctrine inapplicable." In re Wiand, 2007 WL 963165, at *7

(M.D. Fla. 2007). In addition, if a corporate plaintiffs' agents are acting in their own interests and

adversely to the interests of the corporation, the agent's conduct will not be imputed to the corporate

plaintiff. In re Food Management Group, LLC, 2008 WL 183410, at *11 (Bankr. S.D.N.Y. 2008).

This is known as the "adverse interest exception" to the doctrine of *in pari delicto*.

      The equitable theory of alter ego liability is recognized by Nevada courts as a theory of

recovery. See LFC Marketing Group, Inc. v. Loomis, 8 P. 3d 841, 845 (Nev. 2000). Under the

traditional application of the alter ego doctrine, the court disregards the corporation's separate existence

to hold the corporation's **shareholders** liable for the corporation's debts. See id. Nevada generally

treats corporations as "separate legal entities". Id. at 847 (emphasis added). An alter ego finding under

Nevada law transforms this relationship by deeming a corporation and its alter ego to be a single entity. See In re Western World Funding, Inc., 52 B.R. 743, 783 (Bankr. Nev. 1985).

As an initial matter, it should be noted that neither *in pari delicto* or alter ego are relevant to a determination under Section 1112 of the Bankruptcy Code. This point is best made by the lack of a single case cited by the Appellants to the contrary. While *in pari delicto* may be a defense in an adversary proceeding and alter ego a means for a creditor to assert a claim in the case, neither doctrine has anything to do with a finding of "cause" under Section 1112 of the Bankruptcy Code. The legal concepts are as inapplicable to "cause" as would be the defense of "statute of limitations." Even if the legal concepts did apply to "cause", tn the instant case, Mr. Amodeo is not an officer, director or shareholder of Mirabilis. To the extent Mr. Amodeo may have exerted undue influence on the officers and directors of Mirabilis which caused Mirabilis to engage in a fraudulent or improper purpose, that would be an issue of liability of the officers and directors of Mirabilis for breach of fiduciary duty. However, state common law does not provide an avenue to pierce the corporate veil and hold non-shareholders liable for a corporation's debts. Even if the alter ego theory of recovery would allow the creditors to hold Mr. Amodeo personally liable for the debts of the Debtors, this theory of recovery would not be a bar to the Debtors filing Chapter 11 bankruptcy petitions, but would rather provide an additional an avenue of recovery of assets for the benefit of the bankruptcy estates. Pursuant to 11 U.S. C. §105(a) and by virtue of its general equitable powers, the Bankruptcy Court may consolidate separate estates. In re Auto-Train Corporation, 810 F.2d 270 (D.C. Cir. 1987); In re Continental Vending Machine Corp., 517 F. 2d 997 (2d Cir. 1975), cert. denied, 424 U.S. 913, 96 S. Ct. 1111,

47 L. Ed. 2d 317 (1976). Orders of "substantive consolidation" combine the assets and liabilities of separate and distinct, but related, legal entities into a single pool and treat them as a single entity. This enables a Bankruptcy Court to disregard separate corporate entities and to essentially pierce their corporate veils in order to reach assets for the satisfaction of debts of a related corporation. In re Bonham, 229 F. 3d 750, 764 (9th Cir. 2000).

The Bankruptcy Court was not clearly erroneous in finding that the issues of alter ego liability or the doctrine of *in pari delicto*, both based solely upon hearsay evidence of Mr. Amodeo, are not sufficient "cause" to override the "potentiality of significant distribution to a group of very legitimate creditors". Accordingly, this Court should affirm the Bankruptcy Court's ruling denying the motion to dismiss based upon allegations of conduct by a non-shareholder which could potentially result in the subsequent application of the doctrine of *in pari delicto* or alter ego liability in adversary proceedings or contested matters.

C.   The Appellees' voluntary petitions were filed
for a valid bankruptcy purpose.

The Appellees' filed the Chapter 11 bankruptcy petitions with the intent to maximize the recovery of all the Debtors' assets, preserve the value of these of assets, and distribute the proceeds from these assets to all creditors. During the pendency of these Chapter 11 bankruptcy proceedings, there was no: (i) substantial or continuing loss to or diminution of the estates; (ii) gross mismanagement of the estates; (iii) failure to maintain appropriate insurance; (iv) unauthorized use of cash collateral; (v) failure to comply with an order of the court; (vi) unexcused failure to satisfy timely any filing or reporting

16

requirement; (vii) failure to attend the meeting of creditors or examination; (viii) failure to provide

information or attend meetings reasonably requested by the United States trustee; (ix) failure to timely

pay taxes owed after the petition date or to file tax returns due after the petition date; or (x) failure to

file disclosure statement or to file and confirm a plan. The sole basis for the Appellants argument for

dismissal or conversion rests on "the absence of a reasonable likelihood of rehabilitation" due to the

Debtors' "bad faith" intent to file a liquidating plan.

Chapter 11 bankruptcy petitions are subject to dismissal or conversion under 11 U.S.C.

§1112(b) unless filed in good faith. In re SGL Carbon Corp., 200 F. 3d 154, 159-62 (3d Cir. 1999).

The burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith. See

id. Whether the good faith requirement has been satisfied is a "fact intensive inquiry" in which the court

must examine "the totality of facts and circumstances" and determine where a "petition falls along the

spectrum ranging from the clearly acceptable to the patently abusive." Id. at 162. As such, the

determination of "cause" under §1112(b) is "subject to judicial discretion under the circumstances of

each case." In re Albany Partners, Ltd., 749 F. 2d 670, 675 (11th Cir. 1984) (quoting In the Matter

of Nancant, 8 B.R. 1005, 1006 (Bankr. D. Mass. 1981)). The equitable nature of this determination

supports the construction that a debtor's lack of "good faith" may constitute cause for dismissal of a

petition. See id. In finding a lack of good faith courts have emphasized an intent to abuse the judicial

process and the purposes of the reorganization provisions. See id.

The Supreme Court has identified two of the basic purposes of Chapter 11 as: (i)

"preserving going concerns" and (ii) "maximizing property available to satisfy creditors." Bank of Am.

17

Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999). Numerous courts have made clear that even where the debtors are not attempting to preserve going concern, for example when a liquidating plan will be filed, they can still satisfy the good faith requirement, provided that the filing preserves "some value that otherwise would be lost outside of bankruptcy." In re Crown Village Farm, LLC, 2009 WL 1651385, *5 (Bankr. D. Del. 2009) (quoting Intergrated Telecom, 200 F. 3d at 120). "Reorganization ... is not the only appropriate use of Chapter 11 since the Code clearly contemplates liquidating plans under 11 U.S.C. § 1123(b)(4)." Integrated Telecom, 200 F. 3d at 120 n. 4. Accordingly, so long as the liquidation plan is maximizing the value of the debtor's estate, it serves a valid bankruptcy purpose and meets the good faith requirement. See id. The weight of authority permits such liquidation. See Loop Corp. v. United States Trustee, 379 F. 3d 511, 517 (8th Cir. 2004).

Moreover, the request to dismiss or convert a case under Chapter 11 to a case under Chapter 7 due to the "absence of a reasonable likelihood of rehabilitation" also requires a showing by the movant that there has been a continuing loss to or diminution of the estate. In re All American of Ashburn, Inc., 40 B.R. 104 (Bankr. N.D. Ga. 1984). Furthermore, in cases where there has been no loss or diminution of the estate during the administration of the bankruptcy estate, courts have found that no cause for conversion exists under subsection (1) of §1112(b). See id. at 107; see also In re Tracey Service Co., Inc., 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982) ("... the creditor has alleged that there is no likelihood of rehabilitation. In addition, the movant must show a continuing loss to the estate.")

18

In the instant case, the Appellants argue that there is sufficient cause to dismiss or convert these bankruptcy cases because: (i) the Appellees filed the bankruptcy petitions with the intent to liquidate, and therefore, the petitions were filed in bad faith; and (ii) the Appellees' are liquidating, therefore, there is no likelihood of rehabilitation. A debtor filing a voluntary petition under Chapter 11 with the intent to liquidate does not render the bankruptcy filing *per se* bad faith. The Appellees filed the Chapter 11 bankruptcy petitions with the intent to maximize the recovery of assets for the benefit of all creditors. The bankruptcy estates consist of "real assets and a collectible book of various types of tangible and intangible property that might result in a substantial distribution" to creditors. August 26, 2009 Transcript, p. 12, ln. 17-23; see also Doc. Nos. 36, 37, 15. The bankruptcy court is the only forum where the Debtors could substantively consolidate all claims and assets into one Liquidating Debtor and thereby provide for the equitable distribution to all creditors, not just the United States. In addition, the causes of action, including the requests for refunds from various insurance and reinsurance companies, could only have been brought through the bankruptcy forum. If all the assets of the Debtors had been seized by the United States, there would have been no ability for the Debtors to preserve these causes of action for the benefit of all creditors. Moreover, the Appellants failed to prove that there has been a continuing loss to or diminution of the estate. To the contrary, Mr. Cuthill has been working very diligently in identifying and recovering assets of the bankruptcy estates. See Doc. Nos. 43, 95, 96, 99, 119, 129, 155, 182, 210, 223. The Appellants failed to demonstrate "bad faith" or "cause" to dismiss or convert the Appellees' bankruptcy cases.

19

The Bankruptcy Court did not abuse its discretion in finding that it does not constitute "bad faith" to file a Chapter 11 bankruptcy petition with the intent to maximize the recovery of assets for the benefit of all creditors through a liquidating plan. Accordingly, this Court should affirm the Bankruptcy Court's ruling denying the motion to dismiss due to the Appellees' intent to maximize the property available to satisfy all creditors.

> D.   Given the circumstances of the Appellees'
>      bankruptcy cases, it was in the best interests
>      of creditors and the estates to deny the motions
>      to dismiss or convert.

Even though the Appellants failed to demonstrate "cause" for the dismissal or conversion of the Appellees' Chapter 11 bankruptcy petitions, the Bankruptcy Court found that given the unusual circumstances of these bankruptcy cases, the cases would not be dismissed or converted to a case under Chapter 7. Pursuant to §1112(b)(1), the initial burden lies with the movant to establish "cause" for dismissal. In re Gateway Access Solutions, Inc., 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007). The list of what constitutes "cause" is proscribed under §1112(b)(4). See id. Generally, such lists are viewed as illustrative rather than exhaustive, and courts should "consider other factors as they arise." See id. However, even if the movant establishes "cause", conversion or dismissal may be disallowed if the debtor specifically identifies "unusual circumstances" which establish conversion is not in the best interest if creditors. See id. at 560. The term "unusual circumstances" is not defined in the statute, the phrase, however, contemplates conditions that are not common in chapter 11 cases. In re Pittsfield

20

Weaving Co., 393 B.R. 271, 274 (Bankr. D.N.H. 2008) (citing In re Fisher, 2008 WL 1775123, *5 (Bankr. D. Mont. 2008)).

In the case In re Orbit Petroleum, Inc., 395 B.R. 145, 146 (Bankr. D. N.M. 2008), a group of creditors moved to dismiss the debtor's chapter 11 based upon the following allegations of "cause": (i) failure to file monthly operating reports; (ii) failure to file United States trustee reports and failure to pay United States trustee's fees; (iii) failure to make payments due to secured creditors; (iv) substantial and continuing losses and diminution of the bankruptcy estate and the absence of a reasonable likelihood of rehabilitation; (v) declining production due to insufficient cash flow; and (vi) inability to reorganize. At the time of the hearing on the motion to dismiss, the debtor had filed its monthly operating reports, paid United States trustee's fees, and filed a plan of reorganization and disclosure statement. See id. The debtor was continuing to lose money, production was down, and severance taxes based on the oil production was overdue. See id. at 147. The debtor's plan of reorganization required a $7 million cash infusion, which would be used to pay all creditors in full as of the effective date. See id.

The issue before the bankruptcy court was whether given the "cause" to dismiss or convert, there existed "unusual circumstances" sufficient to disallow the motion to dismiss. See id. at 148. The bankruptcy court ruled that if the debtor could demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding, then there would exist "unusual facts or circumstances" justifying the denial of a motion to dismiss. See id. at 148-149. The bankruptcy court found that because a plan had been filed which purported to pay all creditors in full

21

as of the effective date of the plan, neither conversion nor dismissal was in the best interest of the

creditors and the estate. See id. at 149.

> A plan which proposes to pay all creditors in full on the effective date is an
> unusual circumstance sufficient to deny conversion or dismissal even in the face
> of demonstrated cause. Creditors and the estate will be far better off if the plan
> is confirmed than if the case were dismissed or converted. By affording, the
> Debtor an opportunity to confirm a plan the proposes to pay all creditors in full,
> the purposes of the bankruptcy code to encourage financial restructuring and
> facilitate payments to creditors is furthered. See id.

In the instant case, the Bankruptcy Court determined that the Appellants failed to

establish "cause." However, even had "cause" been established the record below supports the finding

of unusual circumstances. At the time of the hearing on the Forge Dismissal Motions and the Rachlin

Dismissal Motion, the Appellees' had the Settlement and the support of its largest creditor, the United

States. In addition, the Appellees had filed the Plan and were only three and a half months away from

confirmation. See Doc. No. 209. The Bankruptcy Court specifically found "Mirabilis has a number of

creditors in addition to the United States of America to the tune of many millions of dollars. This is a

case with real creditors, with real assets and with a collectible book of various types of tangible and

intangible property that might result in a substantial distribution to those creditors." August 26, 2009

Transcript, p. 12, ln. 17-23. Furthermore, the Bankruptcy Court noted "that we are on the cusp of

potentially confirming the plan in less than a month, [as such] dismissal will not be the avenue that we

will be pursuing." See id. at p.15, ln. 8-11. The Bankruptcy Court determined that the purposes of

chapter 11 would be better served by maintaining the cases as chapter 11 proceedings and continuing

to confirmation, which was only a month away at the time of the ruling on the Forge Dismissal Motions

and the Rachlin Dismissal Motion. A bankruptcy case in which the Plan is supported by its largest (90%) unsecured creditor and might result in a substantial distribution is an unusual circumstance sufficient to deny conversion or dismissal, even if "cause" had been demonstrated.

The Bankruptcy Court was not clearly erroneous in finding that: (i) the purposes of chapter 11 would be better served by maintaining the bankruptcy cases of Mirabilis and Hoth as cases under chapter 11; and (ii) it was in the best interests of creditors and the estates to deny the motions to dismiss or convert. Accordingly, this Court should affirm the Bankruptcy Court's ruling denying the motion to dismiss given the unusual circumstances.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court's Order Denying Dismissal should be affirmed. The Bankruptcy Court did not abuse its discretion in denying the Forge Dismissal Motions and the Rachlin Dismissal Motion. The Bankruptcy Court's findings of fact that: (i) that the 2005 Bylaws were not adopted by the stockholders of Mirabilis; (ii) Article 8 of Mirabilis' Articles of Incorporation reserves the right of Mirabilis to amend its bylaws; (iii) Nevada state law permits directors to amend a corporation's bylaws unilaterally; (iv) the subsequent appointment of Mr. Moecker and Mr. Cuthill was authorized, as well as the filing of the Chapter 11 bankruptcy petitions; (v) the issues of alter ego liability or the doctrine of *in pari delicto*, both based solely upon hearsay evidence of Mr. Amodeo, are not sufficient "cause" to override the "potentiality of significant distribution to a group of very legitimate creditors"; (vi) it does not constitute "bad faith" to file a Chapter 11 bankruptcy petition with the intent to maximize the recovery of assets for the benefit of all creditors through a liquidating plan,

23

were not clearly erroneous; (vii) the purposes of chapter 11 would be better served by maintaining the

bankruptcy cases of Mirabilis and Hoth as cases under chapter 11; and (viii) it was in the best interests

of creditors and the estates to deny the motions to dismiss or convert   Accordingly, the Bankruptcy

Court's decision should be affirmed.

**DATED** this 8th day of February, 2010.

Respectfully submitted,

/s/ R. Scott Shuker
R. Scott Shuker, Esquire
Florida Bar No.: 984469
rshuker@lseblaw.com
Mariane L. Dorris, Esquire
Florida Bar No.: 0173665
mdorris@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
P.O. Box 3353
Orlando, Florida  32802-3353
Telephone (407) 481-5800
Facsimile (407) 481-5801
Attorneys for Appellees

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC.,
and HOTH HOLDINGS, LLC,

Bkry Case Nos. 6:08-bk-04327-KSJ and
6:08-bk-04328-KSJ

Debtors.
_____/

RACHLIN, COHEN & HOLTZ,
LLP, and FORGE CAPITAL
PARTNERS,

Consolidated

Case No.: 6:09-cv-01658-GAP

Appellants,

vs.

MIRABILIS VENTURES, INC.,
and HOTH HOLDINGS, LLC,

Appellees.
_____/

### Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing ANSWER BRIEF OF APPELLEES, MIRABILIS VENTURES INC. AND HOTH HOLDINGS LLC, has been furnished by either electronic or U.S. First Class mail, postage prepaid, to: Joseph A. DeMaria, Tew Cardenas, LLP, 15th Floor, 1441 Brickell Ave., Miami, FL 33131-3407; Bart R. Valdes, deBeaubien, Knight, Simmons, Mantzaris & Neal, LLP, 609 West Horatio Street, Tampa, FL 33606; and Kenneth C. Meeker, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801, this 8th day of February, 2010.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire