MIDDLE DISTRICT OF FLORIDA
Orlando Division

IN RE:

MIRABILIS VENTURES, INC.

    Debtor.
_____/

RACHLIN COHEN & HOLTZ LLP,
et al.,

    Appellants,

v.

MIRABILIS VENTURES, INC.,

    Appellee.
_____/

CASE NO.: 6:08-BK-04327-KSJ
CHAPTER 11

Consolidated

CASE NO.: 6:09-cv-01658-GAP

---

## APPELLANTS' RACHLIN COHEN & HOLTZ, LAURIE S. HOLTZ AND JOSE I. MARRERO'S REPLY BRIEF

---

**TEW CARDENAS LLP**
JOSEPH DeMARIA, ESQ.
  Florida Bar # 764711
JESSICA FRANK, ESQ.
  Florida Bar # 055839
*Attorneys for Appellants Rachlin Cohen & Holtz, Jose I. Marrero and Laurie S. Holtz*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, FL 33131
Telephone: 305.536.1112
Facsimile: 305.536.1116

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

ARGUMENT AND CITATIONS OF AUTHORITY ................................. 1

    I.      Appellee Distorts Appellants Position as to Why Cause Exists to Dismiss this Chapter 11 Proceeding ............................................................. 1

           A.     Appellee Continues to Ignore that the Only Way to Determine Whether a Debtor Filed a Chapter 11 Petition in Good Faith is to Evaluate the Debtor's Intent at the Time of Filing ............................................. 2

           B.     In Addition to Lack of Good Faith, Both Factors Listed in 11 U.S.C. 1112(b)(4)(A), Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation, Are Present in this Case. ............................................................. 5

    II.     No Unusual Circumstances Exist in this Case. ........................... 6

    III.    Appellants Never Agreed to Proceed Without an Evidentiary Hearing. ......... 9

CONCLUSION ............................................................................. 10

# TABLE OF AUTHORITIES

**Federal Cases**

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,
   526 U.S. 434, 453 (1999) ............................................................................................ 2

Crown Village Farm, LLC v. Arl, LLC et al. (In re Crown Village Farm, LLC),
   415 B.R. 86 (Bankr. D. Del. 2009) ......................................................................... 3, 4

In re All Am. of Ashburn,
   40 B.R. 104 (Bankr. N.D. Ga. 1984) .......................................................................... 3

In re Ameribuild Contr. Mgmt., Inc.,
   399 B.R. 129 (Bankr. S.D.N.Y. 2009) ................................................................ 4, 5, 7

In re Deer Park,
   136 B.R. 815 (9th Cir. 1992) ...................................................................................... 3

In re FRGR Managing Member, LLC,
   419 B.R. 576, 582 (Bankr. S.D.N.Y. 2009) ............................................................... 7

In re Gateway Access Solutions, Inc.,
   374 B.R. 556, 562 (Bankr. M.D. Pa. 2007) ............................................................ 5, 6

In re Joyce Don & Associates, Inc., No. 6:07-bk-04878-ABB,
   2008 WL 343265, *2 (M.D. Fla. Jan. 30, 2008) ........................................................ 1

In re Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.),
   825 F.2d 296, 297 (11th Cir. 1987) ............................................................................. 1

In re New Towne Dev., LLC,
   404 B.R. 140, 148 (Bankr. M.D. La. 2009) ............................................................... 7

In re Orbit Petroleum, Inc.,
   395 B.R. 145 (Bankr. D. N.M. 2008) ................................................................ 2, 7, 8

In re Pittsfield Weaving Co.,
   393 B.R. 271, 274 (Bankr. D. N.H. 2008) ................................................................. 6

In re Siegel,
   340 B.R. 638 (Bankr. S.D. Fla. 2006) ........................................................................ 2

In re Tracy Serv. Co., Inc.,
   17 B.R. 405 (Bankr. E.D. Pa. 1982) ........................................................................... 3

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

Loop Corp. v. U.S. Trustee,
  379 F.3d 511, 515 (8th Cir. 2004) ............................................................................. 2, 5, 6

**Federal Statutes**

11 U.S.C. § 1112 ............................................................................................................... 3

11 U.S.C. § 1112(b) ....................................................................................................... 1, 3

11 U.S.C. § 1112(b)(1) ....................................................................................................... 3

11 U.S.C. § 1112(b)(4)(A) .......................................................................................... 1, 5, 6

11 U.S.C. § 1129(a)(11) ..................................................................................................... 3

Pub. L. No. 109-8 .............................................................................................................. 3

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

## ARGUMENT AND CITATIONS OF AUTHORITY

I. **Appellee Distorts Appellants Position as to Why Cause Exists to Dismiss this Chapter 11 Proceeding**

In its Answer Brief, Appellee distorts Appellants' arguments in support of dismissal. Appellee states that "[t]he sole basis for the Appellants' argument for dismissal or conversion rests on 'the absence of a reasonable likelihood of rehabilitation' due to the Debtors' 'bad faith' intent to file a liquidating plan." Answer Brief (District Court D.E. 25), p. 10. This statement is simply inaccurate and misconstrues Appellants' position.

Appellants rely on two independent bases for dismissal of this Chapter 11 case. First, the case was not filed in good faith. Because good faith is an implicit requirement for filing of bankruptcy protection, a debtor's lack of good faith constitutes cause for dismissal of a petition. In re Joyce Don & Associates, Inc., No. 6:07-bk-04878-ABB, 2008 WL 343265, *2 (M.D. Fla. Jan. 30, 2008); In re Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.), 825 F.2d 296,297 (11th Cir. 1987). Lack of good faith serves as an additional ground to dismiss a Chapter 11 proceeding in addition to the sixteen (16) enumerated factors listed in 11 U.S.C. § 1112(b) ("Statute"). In this case, Appellee lacks good faith because it filed this Bankruptcy case to assist in the criminal proceedings of its principal, Frank Amodeo, and because its sole intent want to self-liquidate, never to reorganize a legitimate business or to preserve value that would be lost outside of the bankruptcy process.

Appellants' second, independent, basis for dismissal is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," which is one of the enumerated factors under the Statute. 11 U.S.C. 1112(b)(4)(A). In this case, it is not disputed that there is no reasonable likelihood of rehabilitation. See, e.g., June 30, 2009 Hearing

Transcript, page 66, lines 20-23 (D.E. 219). The record reflects a substantial, continuing loss to and diminution of the estate, which supports dismissal.

As stated by Appellee, "[t]he Supreme Court has identified two of the basic purposes of Chapter 11 as: (i) 'preserving going concerns' and (ii) maximizing property available to satisfy creditors." Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999). In this case, there was never any going concern to preserve and the extensive costs associated with this Chapter 11 have only minimized the property available to satisfy creditors.

A.     **Appellee Continues to Ignore that the Only Way to Determine Whether a Debtor *Filed* a Chapter 11 Petition in Good Faith is to Evaluate the Debtor's Intent *at the Time of Filing***

Appellee's primary argument that the Chapter 11 Petition was filed in good faith is that because elements of liquidation are contemplated under the Bankruptcy Code, filing a Chapter 11 Petition with the sole intent to self-liquidate is acceptable. Answer Brief, pp. 10-13. However, Appellee ignores the undisputed fact that the sole reason it desired to self-liquidate under Chapter 11 was to assist Amodeo in his criminal case (or stated otherwise, Appellee's intent at the time of filing). Furthermore, the cases cited by Appellee do not support the contention that a debtor can file a Chapter 11 with the sole intent to self-liquidate.

First, many of the cases Appellee cited found that cause existed under 11 U.S.C. § 1112(b) for the same reasons that cause exists to dismiss this case. Loop Corp. v. U.S. Trustee, 379 F.3d 511, 515 (8th Cir. 2004) (affirming decision to convert Chapter 11 to Chapter 7 because the estate was continuing to incur administrative expenses and the debtor had no reasonable likelihood of rehabilitation because it was liquidating); In re Siegel, 340 B.R. 638 (Bankr. S.D. Fla. 2006) (denying motion for sanctions in case that was *already* converted from a Chapter 11 to Chapter 7); In re Orbit Petroleum, Inc., 395 B.R. 145 (Bankr. D. N.M. 2008)

2

(holding that cause existed because debtor's monthly operating reports showed that the debtor was losing money and its proposed plan did not provide for rehabilitation or continued operations); In re Tracy Serv. Co., Inc., 17 B.R. 405 (Bankr. E.D. Pa. 1982) (converting Chapter 11 to Chapter 7 where debtor was not conducting any business, had no offices, no employees and its balance sheet showed a negative net worth).

The remaining cases cited by Appellee are inapposite or irrelevant to the instant case and do not address the debtor's intent at the time of filing. See In re Deer Park, 136 B.R. 815 (9th Cir. 1992) (determining whether it was error to order the IRS to apply payments pursuant to a Chapter 11 liquidation plan to the trust fund portion of debtor's federal tax liability)[1]; In re All Am. of Ashburn, 40 B.R. 104 (Bankr. N.D. Ga. 1984); Crown Village Farm, LLC v. Arl, LLC et al. (In re Crown Village Farm, LLC), 415 B.R. 86 (Bankr. D. Del. 2009).

At the outset, it is important to note that Ashburn was decided pre-BAPCA (Bankruptcy Abuse Prevention and Consumer Protection Act). Following its amendment in 2005, 11 U.S.C. § 1112 requires dismissal or conversion when cause is established. 11 U.S.C. § 1112(b)(1) (stating that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause") (emphasis added). At the time Ashburn was decided, the language of 11 U.S.C. § 1112(b) was permissive and instructed that courts may dismiss or convert a Chapter 11 case when cause is shown. See Pub. L. No. 109-8, § 442(a).

Second, the Court in Ashburn refused to convert the case from a Chapter 11 to Chapter 7 because of the specific circumstances in that case, including that a trustee was already appointed

---

[1] Again, Appellants do not dispute that Chapter 11 allows for certain liquidation proceedings within the context of reorganization, i.e. liquidation plans pursuant to 11 U.S.C. § 1129(a)(11).

3

and that the creditors' committee was providing substantial assistance to the trustee. Ashburn noted, however, that generally costs are saved by conversion to Chapter 7 because layers of administrative expenses are eliminated. The record in this case was that the debtor-in-possession, who wishes to curtail this case and continue to receive substantial payments to himself and his professionals, opposed conversion as well as dismissal.

Crown Village is also inapposite to this case. Crown Village was a single asset real estate case involving a defunct development plan of the debtor. The debtor entered into a fee letter with Bank of America, the lender on the property, to avoid foreclosure of the land on which the development was to take place. The fee letter provided that Crown Village would file for Bankruptcy, and then the property would be sold at auction. Subsequently, certain plaintiffs involved in state court litigation against the debtor argued that the debtor filed its Chapter 11 petition as a litigation tactic. The Court found that the bankruptcy case was not filed as a litigation tactic because it was being planned and was ready for filing long before the state court actions were filed. Crown Village, 415 B.R. at 92. The process allowed by the Court in Crown Village maximized and preserved the value of the land, the most substantial asset of the debtor. In this case, no such purpose exists, and instead, substantial assets continue to be drained from the estate by payments to the debtor's representative and his professionals.

This point is further illustrated by contrasting In re Ameribuild Contr. Mgmt., Inc., 399 B.R. 129 (Bankr. S.D.N.Y. 2009), with the following cases. Following an evidentiary hearing, the Court reasoned that:

> [The debtor] has no employees, no income, and no business, and not even a bank account...[the debtor] represented that the purpose of the case was 'to utilize the chapter 11 process to address its litigation burden in a fair and equitable manner. The Debtor believes that it will be able to collect its receivables which

4

in turn will lead to a distribution to its creditors under a chapter 11 plan'... '[t]he primary objection [sic] of the Debtor's filing for chapter 11 relief was to give the Debtor the ability to collect the Receivables and provide the Debtor with a mechanism to distribute the collections pursuant to a chapter 11 plan...This does not indicate any intent to reorganize a business, which is the lifeblood of the Chapter 11 process. 'When it is clear that, from the date of the filing, the debtor has no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous.'

The debtor's failed arguments in Ameribuild are the same as those made by Appellee in this case. See Answer Brief, p. 22. Accordingly, cause existed to dismiss Appellee's Chapter 11 filing and the Order denying dismissal should be reversed.

B. **In Addition to Lack of Good Faith, Both Factors Listed in 11 U.S.C. 1112(b)(4)(A), Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation, Are Present in this Case**

Appellee's contention that that there was no substantial or continuing loss to or diminution of the estates is inaccurate. Answer Brief, p. 9 and 11. This is not the case. The inquiry under 11 U.S.C. § 1112(b)(4)(A) is twofold. "First, the Court must look at the track record of the Debtor to determine if it suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented at the hearing." In re Gateway Access Solutions, Inc., 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007). Cause exists under § 1112(b) where ongoing expenses associated with administering the estate exist and where the debtor is liquidating and, therefore, has no likelihood of rehabilitation. Loop Corp. v. U.S. Trustee, 379 F.3d 511, 515 (8th Cir. 2004). The debtor-in-possession easily meets these criteria, which further support dismissal.[2]

---

[2] Appellants will not address likelihood of rehabilitation as Appellee agrees that there is no possibility of reorganization. See, e.g., June 30, 2009 Hearing Transcript, page 66, lines 20-23 (D.E. 219).

5

In order to determine whether Appellee has suffered continuing losses or diminution to the estate, courts look to "both the financial prospects of the Debtor and the financial records filed with the Court." Gateway Solutions, 374 B.R. at 564. Similar to this case, the Court in Gateway found that the estate was diminishing rapidly at the expense of creditors, the monthly operating reports showed a sharp decline in cash position, and "[f]urther troubling [was] the extensive costs from professional fees that are accumulating as the case lingers in Chapter 11."[3] Id.; D.E. 42, 52, 71, 139, 186, 205, 292. Furthermore, a "negative cash flow situation is alone sufficient to establish 'continuing loss or diminution to the estate.'" Loop, 379 B.R. at 515-16. The record in this case establishes the same type of diminution of value. See Monthly Operating Reports, D.E. 42, 52, 71, 139, 186, 292.

Accordingly, Appellants have established both factors of 11 U.S.C. § 1112(b)(4)(A) – there is no possibility of rehabilitation and there is substantial and continuing loss and diminution to the estate. Therefore, the Bankruptcy Court erred when it refused to dismiss this case.

## II.   No Unusual Circumstances Exist in this Case

Appellee contends that unusual circumstances exist in this case that prevent dismissal even if cause is established. Answer Brief, pp. 14-17. Section 1112(b) does not define unusual circumstances, "but the phrase contemplates conditions that are not common in Chapter 11 cases." In re Pittsfield Weaving Co., 393 B.R. 271, 274 (Bankr. D. N.H. 2008). While a great number of reported decisions have not been issued on the topic, the cases that have refused to

---

[3] At the time this appeal was filed, the professional fees requested in this case were approximately five times those requested by the debtor in Gateway. See D.E. 292, Attachment 2, Post Petition Accounts Payable. That number continues to rapidly increase. As of November 30, 2009, post-petition accounts payable were over $1 million, almost all of which constituted payments to professionals.

6

dismiss a Chapter 11 case because unusual circumstances exist illustrate the kinds of situations intended by Congress to constitute unusual circumstances.

For example, in Orbit Petroleum, the proposed plan of reorganization called for a capital infusion of $7 million by the debtor's parent company, which would then be used to pay all creditors in full on the effective date of the plan. 395 B.R. at 147. Certainly, full payment to all creditors on the effective date of the plan is unusual, and it would be foolish to ignore such circumstances. Therefore, the Court refused dismissal even though it found that cause existed.[4] Id.; see also In re New Towne Dev., LLC, 404 B.R. 140, 148 (Bankr. M.D. La. 2009) (finding unusual circumstances where it was likely that all unsecured claims could be paid because the debtor held $13 million in debt secured by land worth $17-18 million).

The common thread in the aforementioned cases is the courts' refusal to dismiss or convert a case where full and substantial payments will be made to creditors. In those cases, the debtors are fulfilling, as opposed to abusing, the purposes of the Bankruptcy Code. Such circumstances are a far cry from this case. The sole meaningful asset of this estate are the causes of action against attorneys and accountants. This estate exists almost solely for the purpose of pursuing litigation, and the representative of the debtor and his counsel are draining the assets of the estate to pursue this litigation. The Court should not consider Appellee's uncertain litigation claims as a basis to permit this proceeding – filed in bad faith – to continue. Courts "reject the need to evaluate the merits of a debtors' litigation claims in deciding whether to dismiss or convert a Chapter 11 case." In re FRGR Managing Member, LLC, 419 B.R. 576, 582 (Bankr. S.D.N.Y. 2009); In re Ameribuild Constr. Mgmt., Inc., 399 B.R. 129 (Bankr. S.D.N.Y. 2009).

---

[4] The Court held that cause existed because debtor's monthly operating reports showed that the debtor was losing money and the plan was one of liquidation rather than rehabilitation.

7

Appellee argues that "[a] bankruptcy case in which the Plan is supported by its largest (90%) unsecured creditor and might result in a substantial distribution is an unusual circumstance sufficient to deny conversion or dismissal." Answer Brief, p.16. First, while courts have found "unusual circumstances" to exist where all creditors are to be paid in full on the effective date of the plan, see Orbit Petroleum, supra, no court has found unusual circumstances to exist simply where a creditor, even the dominant creditor, entered into an agreement to permit the debtor to pursue contingent litigation in the hope of a recovery. That agreement did not, and could not, transform this bad faith proceeding into a good faith proceeding. All that agreement accomplished was to end the United States' challenge to the continuation of this proceeding. Rachlin had its own standing and right to challenge this proceeding and the United States' compromise does not undermine that challenge.

Second, while the U.S initially allowed the debtor to pursue litigation, in its recent filing in the Bankruptcy court, the government opposed the debtor. See United States' Opposition to Disbursement of Payments, D.E. 474 (stating that "[i]n over eighteen months since this bankruptcy was instituted, ...the predominant persons and entities who have benefitted from this bankruptcy are the president of this company and the professionals...The United States and the creditors are the only entities that have not received any payments").[5] The so-called "unusual circumstances" of the United States supporting the debtor no longer exist.

---

[5] This issue and other related matters were addressed in Appellants' Response to Appellee's Motion to Dismiss. (District Court, D.E. 18). As Appellee adopted and incorporated by reference the arguments in its Motion to Dismiss, Appellants likewise adopt and incorporate the arguments made in response to Appellee's Motion to Dismiss (District Court, D.E. 21) to the extent that Appellee's arguments have not already been rejected by this Court in its Order denying Appellee's Motion to Dismiss (District Court, D.E. 27).

### III. Appellants Never Agreed to Proceed Without an Evidentiary Hearing

At the May 20, 2009 hearing, the Bankruptcy Court refused to hold an evidentiary hearing. (D.E. 217). Appellants did not agree that an evidentiary hearing was not necessary as suggested by Appellee. See Answer Brief, pp. 6-8 (quoting counsel for Rachlin's statement that the issues could be addressed "without an evidentiary hearing because of the unique aspects of this case"). Rather, that statement was a part of a broader conversation whereby Appellant suggested methods to streamline the process for the hearing on the Motion to Dismiss. Specifically, Rachlin agreed that an evidentiary hearing would not be necessary if Appellee agreed to stipulate to the evidence that would be presented in support of the Motion to Dismiss (i.e. the statements of Frank Amodeo during his plea hearing that he coordinated the filing of this Bankrupcty case in an effort to reduce his criminal sentence). (D.E. 205).

At the May 20, 2009 hearing, the undersigned ultimately stated that "the short answer is that we need a hearing. I think it needs to be evidentiary in nature so [the Court] can make findings of fact and conclusions of law...if [the Court] want[s] to have a two stage hearing [to address standing and the evidence supporting the Motion to Dismiss separately], that's fine, but [the Court] will need to hear the evidence." D.E. 217, p. 18, lines 17-23. The Court then indicated that there would not be an evidentiary hearing, but it would consider evidence to which the parties stipulated. Id. at p. 24.

Following the May 20, 2009 hearing, Appellants drafted a proposed stipulation that it provided to Appellee's counsel. However, Appellee refused to enter into any kind of stipulation with Appellants. (D.E. 205, p.4). At that point, the Bankruptcy Court had already made its position clear that there would be no evidentiary hearing. Therefore, no benefit would be provided to Appellee by entering into the proposed stipulation. Instead, Appellee's refusal to

9

stipulate to the evidence only ensured that the evidence of bad faith would not be considered by the Bankruptcy Court. Ultimately, the Court employed the infirm procedure of making findings of fact and conclusions of law without an evidentiary hearing, which led to the error in this case.

## CONCLUSION

There can be no illusion as to what has happened in this case. First, the Chapter 11 Petition was filed with the sole intent to self-liquidate in order to assist in a criminal case and has produced no benefits to the creditors of the estate. Second, the Petition was orchestrated so that at the time of filing a so-called new director would declare his independence and claim that this proceeding was filed with proper intentions. Third, Rachlin presented the Bankruptcy Court with proof that this proceeding was filed in bad faith. However, the Bankruptcy Court refused to consider evidence and refused to dismiss this case. Fourth, the debtor and his professionals have continued to drain the estate of its assets over the objection of the United States – and Appellee claims that it is too late for this Court to remedy the obvious violation of the Bankruptcy Code.

However, it is not too late for this Court to terminate a process that reflects poorly on the process of Chapter 11 reorganization and simply benefits the debtor's representatives and his lawyers. It is never too late to correct an improper proceeding. If Mirabilis wishes to pursue its litigation claims against its former professionals, it can attempt to do so in Florida state court where those cases should have been filed, and it must do so without using the funds of this estate. If the debtor's representative and his lawyers truly believe in the efficacy of their claims, they should pursue their claims without using taxpayer dollars. Appellants respectfully request that this Court reverse the Bankruptcy Court's September 2, 2009 Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case (D.E. 268) and dismiss this Bankruptcy proceeding.

Respectfully Submitted,

**TEW CARDENAS LLP**
*Attorneys for the Appellants*
1441 Brickell Avenue
Four Seasons Tower, 15th Floor
Miami, FL 33131
Phone: (305) 536-1112
Fax: (305) 536-1116
E-Mail: JAD@tewlaw.com

/s/ Joseph A. DeMaria
C. THOMAS TEW, P.A.
 Florida Bar No. 098160
JOSEPH A. DEMARIA, ESQ.
 Fla. Bar No. 764711
JESSICA R. FRANK, ESQ.
 Fla. Bar No. 0055839

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of March, 2010, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Todd K. Norman (tkn@stumplaw.com) and Roy Scott Kobert (orlandobankruptcy@broadandcassel.com), Broad and Cassel, 390 N. Orange Avenue, Suite 1400, Orlando, Florida 32801, and the undersigned also sent the foregoing via email to Robert C. Widman, Esq. (widmor48@mwk-law.com), Morris & Widman, P.A. 245 N. Tamiami Trail, Suite E, Venice, FL 34285.

/s/ Joseph A. DeMaria
JOSEPH A. DEMARIA, ESQ.

540038_3

11